State v. Jordan, 57 Utah 612

CORFMAN, C. J., and WEBER, GIDEON, and THUR-MAN, JJ., concur.

STATE v. JORDAN.

No. 3551.   Decided March 14, 1921.   (196 Pac. 565.)

1. CRIMINAL LAW—RIGHT TO "PUBLIC TRIAL" HELD VIOLATED. In view of Const. art. 1, § 12, as to the right to a public trial, in a prosecution for having carnal knowledge of a female under 18 the ruling of the trial court excluding not only the public generally but every friend and relative of the accused, including his mother, although the prosecutrix and her father were permitted to stay in the courtroom, *held* a denial of the right to "public trial," not justified by Comp. Laws 1917, §§ 1788, 1789.[1]

2. CRIMINAL LAW—DENIAL OF PUBLIC TRIAL PRESUMED PREJUDICIAL. Where accused has been denied a public trial, within the meaning of Const. art. 1, § 12, the law presumes accused was prejudiced, and he need not show prejudice.

3. WITNESSES—CONTRADICTORY STATEMENT CONTAINED IN LETTER HELD ADMISSIBLE. In a prosecution for having carnal knowledge of a female under 18, where a witness for accused gave testimony tending to prove that accused's visit to prosecutrix's home, when the offense charged was alleged to have been committed, was at a date later than that fixed and testified to by the state's witnesses, on his cross-examination the court properly admitted a letter written by him in which accused's visit was referred as to being on an earlier date.

4. RAPE—REQUESTED INSTRUCTION AS TO PROSECUTRIX'S ATTEMPT TO SHIELD ANOTHER HELD PROPER. In a prosecution for having carnal knowledge of a female under 18, where there was evidence that prosecutrix gave birth to a child as a result of the act charged as having been committed December 1st, and prosecutrix admitted an act of sexual intercourse with another person during the preceding October, and accused denied intercourse on the date charged, accused was entitled to have the theory that prosecutrix was endeavoring to shield an-

[1] *State* v. *Mannion*, 19 Utah, 505, 57 Pac. 542, 45 L. R. A. 638, 75 Am. St. Rep. 753.

other submitted by an instruction that the jury could consider the admitted intercourse with another in October together with other evidence in determining whether defendant committed the act charged, and in weighing any motive which prosecutrix might have in accusing defendant.

Appeal from District Court, Second District, Davis County; *A. E. Pratt,* Judge.

George Ernest Jordan was convicted of statutory rape, and he appeals.

JUDGEMENT ENTERED UPON THE CONVICTION VACATED AND SET ASIDE, AND NEW TRIAL GRANTED.

*George Halverson,* of Ogden, for appellant.

*Harvey Cluff,* Atty. Gen., and *Wm. A. Hilton,* Asst. Atty. Gen., for the State.

CORFMAN, C. J.

The defendant, George Ernest Jordan, was convicted in the district court of Davis county of the crime of having carnal knowledge of the body of one Lucy Steed, a female over the age of 13 and under the age of 18 years. He appeals from the judgment entered upon said conviction and relies upon the following assignments of errors as grounds for reversal: (1) The exclusion of the public from the courtroom during the trial. (2) The admission and rejection of certain testimony over defendant's objections. (3) The refusal of the court to charge the jury as requested by defendant. (4) The denial of defendant's motion for a new trial.

After the jury had been impaneled and sworn, and before further proceedings were had in the trial of the case, the trial court ordered that "All persons will be excluded from the courtroom during the trial, except those connected with the case, exclusive of witnesses." Thereupon counsel for de-

fendant asked for a public trial, when the court remarked: "The court in such a case as this may exclude the public, and the court has excluded the public in this case." It further appears that before proceeding with the trial the witnesses in the case were called, sworn, and admonished, and then excluded. No complaint is made of that. However, upon motion of the district attorney, the prosecutrix and her father, who was not a witness, were permitted to remain in the courtroom during the progress of the trial, when counsel for defendant again called the court's attention to the fact that "every friend and relative of the defendant have been excluded from the courtroom, including his mother, and the father of the prosecuting witness has been permitted to stay here all the while." The record further shows that at all times the defendant's counsel insisted that the defendant was being denied the constitutional right to a public trial, and duly excepted to the rulings of the court.

It is, among other things, provided by section 12, art. 1, of our state Constitution, that "in criminal prosecutions the accused shall have the right * * * to have a speedy public trial." Comp. Laws Utah 1917, § 1788, provides: "The sittings of every court of justice are public, except as provided" in section 1789, which reads: "In an action for divorce, criminal conversation, seduction, abortion, rape, or assault with intent to commit rape, the court may, in its discretion, exclude all persons who are not directly interested therein, except jurors, witnesses, and officers of the court; provided, that in any cause the court may, in its discretion, during the examination of a witness, exclude any and all other witnesses in the cause." Apparently the ruling of the trial court excluding the public in the present case was predicated on the foregoing provision of our statutes. It will be observed, however, that the statutes referred to does not expressly mention the crime of having carnal knowledge, now under consideration. The defendant contends that if such crime may be included by implication the foregoing provisions of the statute are in direct contravention of the rights guaranteed to the defendant by the provisions of the Con-

stitution above referred to. Similar provisions guaranteeing
a public trial to the criminally accused are to be found in
most, if not all, of the Constitutions of the several states of
the Union. The right evolved out of the early history of the
law when the courts of England, as well as in our own coun-
try prior to our Revolutionary War, refused to permit the
accused, in many instances, to be publicly tried. The flag-
rant abuse of the courts of that early time undoubtedly im-
pressed upon the founders of our form of government, both
national and state, the necessity of making provision in our
fundamental laws that all persons accused with the commis-
sion of public crime shall have a public trial. As to what
constitutes a public trial in a given case has given rise to
much legal discussion, and upon that important question the
decisions of the courts are not altogether harmonious. It may
be said, however, that this constitutional right has been jeal-
ously guarded and adhered to by both the federal and the
state courts. Aside from the inherent power of every court,
in rare instances, to exclude a part of the public, as in such
extreme cases where its presence would interfere with the due
and orderly precedure in the progress of the trial, or where
the testimony is of such a character as to shock the sense of
decency or tend to degrade the public morals, more especially
those of the young, the exclusion of the public should be, and
generally is, held to be violative of the constitutional rights
of the accused. But it is contended on the part of the state
that in the present case it is not shown that the defendant
suffered any prejudice by reason of the court's order com-
plained of, and, further, that the court was justified in ex-
cluding the public by reason of the provision of our statute
(section 1789) above quoted and referred to. We are not
prepared to say that the defendant in the instant case suf-
fered no prejudice. It must be kept in mind that the order
of the trial court was very comprehensive in terms. The
court excluded not only a part of the public, for sufficient
reasons shown, but ''all persons.'' As we read and interpret
the language of the court's order, it in effect practically ex-
cluded the entire public; in fact, the court expressly so stated

that to be his intention.  Conceding, as we must, that the court acted with the best of motives, believing that the trial would proceed without the presence of spectators in a way best calculated to preserve and protect the interests of the general public and without unfairness to the accused, yet it would seem that the court's ruling in that regard, as made, was not altogether in keeping with the spirit of our Constitution, and the fundamental right, to be accorded the criminally accused in all cases, of a public trial.  In so far as section 1789 of our statute may conflict with the right to a public trial before an impartial jury, the statute must give way and the right be not denied.  That will be conceded.  It would seem in this case that not only the general public was excluded but also the mother of the accused.  We cannot conceive of a case, no matter how revolting and disgusting the details of the testimony given, in which the near relatives and friends of the accused should not be permitted to be in attendance upon the trial for the purpose of seeing that the accused is fairly and justly dealt with by the officers of the court and not improperly condemned.

In the case of *People* v. *Hartman,* 103 Cal. 243, 37 Pac. 154, 42 Am. St. Rep. 108, the same question as here considered was before the Supreme Court of California under a constitutional provision like our own.  The right to a public trial had been denied the defendant.  Mr. Justice Garoutte, who wrote the opinion, in commenting upon the procedure of the trial court, said:

"This was a novel procedure, and has no justification in the law of modern times.  We know of no case decided in this country supporting the course of procedure here pursued.  It is in direct violation of that provision of the Constitution which says that a party accused of a crime has a right to a public trial.  The fact that the officers of the court were allowed to be present in no way made the trial public.  For the purposes contemplated by the provision of the Constitution, the presence of the officers of the court, men whom, it is safe to say, were under the influence of the court, made the trial no more public than if they too had been excluded. While a right to the public trial contemplated by the Constitution does not require of courts unreasonable and impossible things, as that all persons have an absolute right to be present and

witness the court's proceedings, regardless of the convenience of the court and the due and orderly conduct of the trial, yet this provision must have a fair and reasonable construction in the interest of the person accused. Judge Cooley, in his work upon Constitutional Limitations, p. 383, has well declared the true rule in the following language:   'The requirement of a public trial is for the benefit of the accused; that the public may see that he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility, and to the importance of their functions; and the requirement is fairly observed if, without partiality or favoritism, a reasonable proportion of the public is suffered to attend notwithstanding that those persons whose presence could be of no service to the accused, and who would only be drawn hither by a prurient curiosity, are excluded altogether.' "

To the same effect see:  *State* v. *Hensley*, 75 Ohio St. 225, 79 N. E. 462, 9 L. R. A. (N. S.) 277, 116 Am. St. Rep. 734; 9 Ann. Cas. 108; *People* v. *Letoile*, 31 Cal. App. 166, 159 Pac. 1057; *State* v. *Osborne*, 54 Or. 289, 103 Pac. 62, 20 Ann. Cas. 627; *Rhodes* v. *State*, 102 Neb. 750, 169 N. W. 433; *People* v. *Yeager*, 113 Mich. 228, 71 N. W. 491; 8 R. C. L. § 30, p. 76.

We are not aware of any case in which the precise question now under consideration has been before this court.  However, in the case of *State* v. *Mannion*, 19 Utah, 505, 57 Pac. 542, 45 L. R. A. 638, 75 Am. St. Rep. 753, where the question of the constitutional right of the accused to be confronted with the witnesses against him was involved, Mr. Justice Miner, the writer of the opinion, in speaking of the rights guaranteed the accused by our Constitution (article 1, § 12), said:  "By our Constitution it is clearly made manifest that no man shall be tried and condemned in secret, and unheard."  So, too, we think, the constitutional right to a public trial is equally sacred and may not be infringed upon by excluding "all persons" from the courtroom except those connected with the case, exclusive of witnesses, as was done by the trial court's order in the present case.

It is, however, contended on the part of the state that there is no showing made on the part of the defendant that he was prejudiced by the act of the court in denying

him a public trial. We do not think it is incumbent upon the defendant to point out wherein he was prejudiced. Having been denied a public trial within the meaning of our Constitution, the law presumes that the act of the court was prejudicial. *People* v. *Hartman, supra; State* v. *Hensley,* 75 Ohio St. 255, 79 N. E. 462, 9 L. R. A. (N. S.) 277, 116 Am. St. Rep. 734, 9 Ann. Cas. 108.

We find no merit in the contention of defendant that errors were committed by the court in the admission and rejection of testimony. During the course of the trial one Higginbotham, a witness in behalf of the defendant, gave testimony tending to prove that the visit of the defendant to the home of the prosecutrix, when the offense charged was alleged to have been committed, was at a date later than that fixed and testified to by the state's witnesses. On cross-examination of the witness a letter written by him in which     3 the defendant's said visit was referred to as being on an earlier date was produced, offered, and received in evidence over the objection of· defendant for the purpose of impeachment of the witness. We think the letter was properly admitted.

Lastly, the defendant complains of the refusal of the court to charge the jury in accordance with the following request:

"The prosecuting witness has testified that she committed an act of sexual intercourse with some person other than the defendant in the month of October, 1918, and you have a right to consider this fact, together with all the facts and circumstances in the case, in determining whether or not the defendant committed the act of sexual intercourse with the prosecutrix at the time in question, and in weighing any motive which she may have in making the accusation against the defendant."

The evidence in this case shows that the prosecutrix gave birth to a child on July 29, 1919, as a result of the criminal act charged against the defendant as having been committed December 1, 1918, The prosecutrix admitted an act of sexual intercourse during the month of October, 1918, with some other person than defendant. The defendant denied having intercourse with the prosecutrix on the date alleged in the information and sought to be proven by the state. It was

the theory of the defense that the prosecutrix was endeavoring to shield one Holliday by wrongfully accusing the defendant with the act charged in the information.     4 Under all the facts and circumstances disclosed by this record we think the request made by the defendant was in keeping with the theory of the defense and should have been given, at least in substance, by the trial court, which the court, in our judgment, did not do.

For the reasons stated, we are of the opinion that the district court erred in not granting the defendant a new trial. It is therefore ordered that the judgment entered upon the conviction of the defendant be vacated and set aside, and a new trial granted.

WEBER, GIDEON, THURMAN, and FRICK, JJ., concur.