## STATE v. BECKSTEAD.

No. 6008. Decided March 18, 1939. (88 P. 2d 461.)

*R. Verne McCullough* and *Clifford L. Ashton,* both of Salt Lake City, for appellant.

*Joseph Chez,* Atty. Gen., and *Zelph S. Calder,* Deputy Atty. Gen., for the State.

MOFFAT, Chief Justice.

Of the errors assigned on this appeal, Defendant and Appellant argues three. They are: (a) The court erred in excluding the public from the court room; (b) denial of motion for a new trial; and (c) refusal to give a requested instruction.

The pertinent facts are that after the jury was sworn, and the information read including Defendant's plea of not guilty, a motion was made on behalf of the State to exclude spectators from the court room. Objection was made. Over objection, the court made the following order:

"The motion to clear the court room is granted, and the motion of the State to invoke the exclusion rule is likewise granted. With the exception of all witnesses the Court at this time orders the court room cleared. Spectators will please leave the court room."

The Defendant and Appellant, Donald James Beckstead, was on trial in the District Court of the Third Judicial District of the State of Utah, charged with the crime of carnally and unlawfully knowing a female over the age of thirteen years and under the age of eighteen years.

No question is raised as to the sufficiency of the evidence in the motion for a new trial or otherwise. The detailed facts or matters of evidence are immaterial in so far as the issues presented in this Court are concerned.

The error complained of in the exclusion order may seem technical. It is, however, fundamental. We are of the opinion that the order excluding all spectators including friends and relatives of the Defendant was error. The Constitution of this State, Sec. 12, Article 1, provides, among other things, that in criminal prosecutions the accused shall have the right to a speedy *public trial.* That section is discussed in a case similar to the instant case in *State* v. *Jordan,* 57 Utah 612, 196 P. 565; also *State* v. *Bonza,* 72 Utah 177, 269 P. 480; *State* v. *Smith,* 90 Utah 482, 62 P. 2d 1110, and cases cited therein. In the cases first cited, what constitutes a public trial is considered as well as a reference to Cooley's Constitutional Limitations. In all of those references, it is laid down as requisite that in a criminal prosecution the trial must be public. The order in the instant case deprived the Defendant of a public trial within the meaning of Section 12 of Article 1 of the Constitution of Utah.

In the case of *State* v. *Smith,* supra, it is said that the order made was not as drastic as the orders condemned in the cases of *State* v. *Bonza* and *State* v. *Jordan.* In the Jordan case after quoting Sections 1788 and 1789, C. L. Utah 1917, which have now become Sections 20-7-1 and 20-7-2, R. S. U. 1933, with the change of the word "provided" to the word "and" in the last clause of the latter section, the Court said:

"Apparently the ruling of the trial court excluding the public in the present case was predicated on the foregoing provision of our statutes. It will be observed, however, that the statutes referred to do not ex-

pressly mention the crime of having carnal knowledge, now under consideration." [57 Utah 612, 196 P. 566.]

After discussing the reasons for and importance of the constitutional provision, it is said:

"But it is contended on the part of the state * * * that the court was justified in excluding the public by reason of the provision of our statute (section 1789). * * * It must be kept in mind that the order of the trial court was very comprehensive in terms. The court excluded not only a part of the public, for sufficient reasons shown, but 'all persons.'"

The court did not directly pass upon the question as to whether the statutes referred to gave the court power to exclude the public or any part of the public. Certain statements would seem to imply that such was the case. As hereinafter indicated, we think the doctrine of those cases must be limited. In criminal causes the constitution neither classifies nor limits the public in its right to attend criminal prosecutions.

Were it not for the fact that two other matters were considered by the trial court and counsel in addition to the exclusion of spectators, the cause could well rest without further discussion. The statements made by the court and objections of counsel at the time of the making of the order excluding all spectators indicate they also had in mind Sections 20-7-1 and 20-7-2, R. S. U. 1933, which read:

Sec. 20-7-1. "The sittings of every court of justice are public, except as provided in the next section.

Sec. 20-7-2. "In an action of divorce, criminal conversation, seduction, abortion, rape, or assault with intent to commit rape, the court may, in its discretion, exclude all persons who are not directly interested therein, except jurors, witnesses and officers of the court; and in any cause the court may, in its discretion, during the examination of a witness exclude any and all other witnesses in the cause."

It will be observed that the part of the latter section just quoted down to the semicolon following the word "court" must relate to civil actions. All of them except "divorce" are

actions in tort for which recovery of damages may be had and cannot refer to criminal prosecutions without conflicting with the constitution. That part of the section following the semicolon, relates to "any cause" but in the discretion of the court "any cause" relates only to the exclusion of "any and all other witnesses in the cause," and only during the examination of a witness. This is what we think was intended by the legislature and avoids any constitutional conflict.

From statements found in the record, the court seems to have been under the impression that that part of the statute relating to criminal conversation, etc., referred to criminal prosecutions and included carnally and unlawfully knowing a female over 13 and under 18 years of age. The reference in the statute to "criminal conversation" does not either refer to nor include what is commonly referred to as carnal knowledge, and if it did it does not apply in a criminal trial.

Webster's New International Dictionary defines "criminal conversation" as being, "unlawful intercourse with a married woman" (considered as a tort)—a suit for damages by the injured husband against the adulterer. 1 Bouv. Law Dict., Rawle's Third Rev., p. 728, defines criminal conversation to be "adultery; unlawful sexual intercourse with a married woman," and further states: "The term is used to denote the act of adultery in a suit brought by the husband of a married woman with whom the act was committed to recover damages against the adulterer." Cases are cited substantiating such definition.

The expression "criminal conversation" as used in the section of the statute under consideration does not include carnal knowledge as used in the criminal code, and if it did it would not warrant the order excluding the public from attendance at the trial.

The fact that the order was later modified by advising relatives that they might return and the further fact that some of them did return could not affect the consequences

of the error. The original order was carried out during a portion of the trial.

The refusal of the court to give the instruction requested and excepted to by Defendant was not error. Much of the language contained in the instruction is found in a statement of an admonitory character in the case of *State* v. *Hilberg*, 22 Utah 27, 61 P. 215. The language there used had no reference to an instruction to a jury either requested or given. Some of the language is in the nature of a lecture upon the circumstances and conditions surrounding such acts and the difficulties of disproving them and the hardships that such difficulties present. There was no error in refusing the instruction as asked.

The order excluding all spectators was error and deprived the Defendant of a constitutional right to have a public trial.

The judgment is reversed and the cause is remanded to the trial court with directions to grant the Defendant a new trial.

LARSON, Justice (concurring).

I concur fully in what is said in the opinion of Mr. Chief Justice MOFFAT, but in view of the fact that a majority of the court, while concurring in the results, do so upon grounds which to my mind are not only unsound but set at naught the express provisions of the Constitution of the State, I feel impelled to point out what to my mind makes such reasoning specious. The majority of the court subscribe to the doctrine that in the trial of any criminal cause the court may exclude from the courtroom everyone except the officers of the court, counsel, the witness testifying, defendant and *a reasonable number of relatives or friends* whom he may select to have remain. In the practical application of this rule I am wondering whether the court or the defendant shall determine how many relatives or friends constitute a reasonable number who may be permitted to remain. And if defendant selects fifteen may the court

say, "You must cut that number down to five"? And how will the court compel him to select between his brother or sister on the one hand and his close friend and companion on the other? And if defendant selects from the spectators those who may remain, will he not as of course select those whose presence will be most embarrassing, humiliating and devastating to the composure of the witnesses for the prosecution? It may be taken as axiomatic that those who were selected to remain would be those whose grimaces and hostile expressions would be most likely to cause the mind of an adverse witness to centrifugate. Surely the nervous witness is better protected and shielded by the presence of a multitude, many of whom would probably be the friends of, or in sympathy with, such witness, than by a smaller group most of whom from the very nature of the conditions imposed and by which they only remain in the courtroom, would be hostile.

But there are more serious reasons why I think the rule indicated by the majority of the court is erroneous. This cause involves the construction and application of a constitutional provision, a part of the Bill of Rights, sacred to all citizens as the foundation of those rights expressly reserved to them as individuals against the encroachments of any governing or administrative body, including the state government, set up by the public, "We the people," for the purpose of executing such powers as are necessary to the orderly procedure and existence of organized society. A criminal trial is in its nature an action brought by the people in the name of the state against an individual who is thought to be guilty of an act forbidden as against the welfare of organized society. In such a trial all citizens have a vital interest. They are interested in seeing that the defendant has a fair and impartial trial; they are also interested in seeing that the state gets a fair and impartial trial; they are interested in seeing and knowing how the legal machinery they have created functions; how the judges, the prosecutors, the police officers and the jurors discharge

their duties and observe their oaths; and how the witnesses demean themselves and to what they testify. They should not be required to get their acquaintance with those matters through what they may consider variously a too friendly or too unfriendly press. Every citizen is vitally concerned in these matters, and should therefore be permitted to obtain such information first hand, and not such as the court may see fit to release to them. Again witnesses are more prone to be truthful under the gaze of the public, many of whom may be able to furnish contradictory proof if they falsify, than when protected by four walls and faced only with a limited group who are not so likely to know facts to the contrary. So too public officials, court attaches, and jurors as well as counsel, when acting in the light of the public gaze, are usually more gentlemanly, orderly, diligent and honest in the discharge of their duties and trusts. Thus in 4 Words and Phrases, Second Series, p. 37, we read:

"The term 'public,' in its enlarged sense, takes in the entire community, the whole body politic, so that a 'public trial' means one which is not limited or restricted to any particular class of the community, but is open to the free observation of all. This does not impose upon the authorities a duty to provide so large a place for public trials as would accommodate every member of the community at the same time. 'It is also requisite that the trial be public. By this is not meant that every person who sees fit shall in all cases be permitted to attend criminal trials, because there are many cases where, from the character of the charge and the nature of the evidence by which it is to be supported, the motives to attend the trial on the part of portions of the community would be of the worst character, and where a regard to public morals and public decency would require that at least the young be excluded from hearing and witnessing the evidences of human depravity which the trial must necessarily bring to light. The requirement of a public trial is for the benefit of the accused, that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triors keenly alive to a sense of their responsibility and to the importance of their functions; and the requirement is fairly observed if, without partiality or favoritism, a reasonable proportion of the public is suffered to attend, notwithstanding that those persons whose presence could be of no service to the accused, and who would only be drawn thither by

a prurient curiosity, are excluded altogether.' An order made by the court of common pleas during the trial of an indictment for a felony, to the effect that in view of the testimony expected to be given by witnesses next to be called the court would continue the trial during the taking of the testimony in the small courtroom, that the sheriff should admit no one to said room except the jury, defendant's counsel, members of the bar, and newspaper men, and one other person, a witness for defendant, exceeds the power of the court in the premises, and its enforcement is a denial to defendant of his constitutional right to a 'public trial.' *State* v. *Hensley,* 75 Ohio St. 255, 79 N. E. 462, 463, 9 L.R.A. (N.S.) 277, 116 Am. St. Rep. 734, 9 Ann. Cas. 108. But the making of an order excluding all persons from the courtroom until the argument, except officers of the court, witnesses and persons whom the several parties to the action may request to remain, does not deprive defendant of a public trial within the statutory and constitutional provisions. *State* v. *Nyhus,* 19 N. D. 326, 124 N. W. 71, 73, 27 L.R.A. (N.S.) 487.

"The requirement in Const. § 11, guaranteeing a public trial, does not mean that all of the public who desire to be present may do so, or that the trial judge may not without favor or discrimination limit the spectators to the capacity of the room in which the trial is had, and the court's action in stationing policemen at convenient places and in limiting admission to the courtroom, to prevent overcrowding, without discriminating against accused or his friends, is not ground for reversal of a conviction. *Wendling* v. *Commonwealth,* 143 Ky. 587, 137 S. W. 205, 211."

The Supreme Court of Michigan in *People* v. *Greeson,* 230 Mich. 124, 203 N. W. 141, declared that a public trial was one not limited to any particular class or community but open to free observation of all. And the Alabama Court has said that a public trial is one that is open to practically any one who may wish to attend and does not include one where the public is so generally excluded as to confine the attendance to those engaged and interested in the trial and their relatives, though the court can in some instances exclude children and those who would overcrowd the courtrooms. *Wade* v. *State,* 207 Ala. 1, 92 So. 101. To like effect are *State* v. *Keeler,* 52 Mont. 205, 156 P. 1080, L. R. A. 1916E, 472, Ann. Cas. 1917E, 619. Where the doors were locked against the public though the courtroom was not

filled or crowded, it deprived one of a public trial guaranteed by the constitution. *People* v. *Micalizzi*, 223 Mich. 580, 194 N. W. 540. *The Pennsylvania Court in Commonwealth* v. *Trinkle*, 279 Pa. 564, 124 A. 191, declared that a public trial means, other matters being equal, where there is no restriction as to admission, except the size of the room in which the trial is held. And in *Davis* v. *U. S.*, 8 Cir., 247 F. 394, L. R. A. 1918C, 1164, the Federal court announced the rule that under

"Const. U. S. Amend. 6 [U. S. C. A.], declaring that in all criminal prosecutions the accused shall enjoy the right to a public trial, it is error to exclude all persons excepting relatives of the defendants, members of the bar, and newspaper reporters, because feeling between the partisans of the prosecution and defense had risen to a high point, and it was reported that some of the witnesses were intoxicated; it appearing that, though the courtroom had become crowded, the court had previously merely cleared the aisles, and that many spectators who were decorous were excluded, only a few persons being admitted through the favor of the bailiff, and therefore such direction to clear the courtroom must be deemed to have deprived defendants of a public trial."

"In some of the decisions it is held that the exclusion of spectators from the court room is a violation of the defendant's constitutional right to a public trial, and that prejudice will in all cases be presumed therefrom. *People* v. *Murray*, 89 Mich. 276, 50 N. W. 995, 14 L. R. A. 809, 28 Am. St. Rep. 294, 9 Am. Crim. Rep. 719; *People* v. *Yeager*, 113 Mich. 228, 71 N. W. 491; *Tilton* v. *State*, 5 Ga. App. 59, 62 S. E. 651; *State* v. *Hensley*, 75 Ohio St. 255, 79 N. E. 462, 9 L. R. A. (N. S.) 277, 116 Am. St. Rep. 734, 9 Ann. Cas. 108; *People* v. *Hartman*, 103 Cal. 242, 37 P. 153, 42 Am. St. Rep. 108. In the case last cited, however, the order was more stringent than the order in the case at bar, for it excluded 'all persons except the officers of the court and the defendant.' Other decisions hold that if the court room is barely large enough for the officers of the court, the witnesses, and the jurymen, or if spectators become disorderly or boisterous with laughter, so as to interfere with the court and confuse the witnesses, they may be excluded without depriving the defendant of his constitutional right. *Kugadt* v. *State*, 38 Tex. Cr. R. 681, 44 S. W. 989; *State* v. *Callahan*, 100 Minn. 63, 110 N. W. 342; *Grimmett* v. *State*, 22 Tex. App. 36, 2 S. W. 631, 58 Am. Rep. 630; *Lide* v. *State*, 133 Ala. 43, 63, 31 So. 953; *People* v. *Kerrigan*, 73 Cal. 222, 14 P. 849." 44 L. R. A., N. S., p. 585.

But under the rule as announced by the opinion of Mr. Justice WOLFE, how is the court to determine who may remain, and who must leave? Should members of the bar, not of counsel, be excluded? If not, why should a special rule apply to lawyers? Should law students then be excluded? Would you exclude a legislator who might be interested in the functioning of the judicial branch of the government? If not, would you exclude a candidate for the legislature, or a prospective candidate for the legislature? Would you exclude the governor or a student of political science, or a medical student? If not, why and upon what basis can a legal distinction be drawn between members of the public, and upon what basis may a court say—A may enter and B may not? We all recognize the right of the court to exclude any one who interferes with its good decorum, orderly procedure and administration, or who is annoying or distracting attention of the jurors, witnesses, counsel, or court officers, but such exclusions are directed against the individuals so offending and not the public generally. The rule as announced seems to me to emasculate the constitutional provisions, is impractical in fair administration, and can lead only to confusion and too often to denial of such trial that the constitution provides.

WOLFE, Justice (concurring in the result).

I concur in the result.

I think the requirements of "public trial" are fully met by the suggestion contained in *State* v. *Jordan,* 57 Utah 612, 196 P. 565, and again reiterated in *State* v. *Bonza,* 72 Utah 177, 269 P. 480, both of which cases rest on the paragraph quoted from Cooley's Constitutional Limitations, 8th Ed. p. 647, and quoted in each of those cases. I think in any case civil or criminal where a witness is compelled for the cause of justice to recite intimate personal details, the court in its discretion should be permitted to clear the courtroom with the exception of a reasonable number of relatives or friends of defendant which he may select to have remain. The fact is that at times a trial in

which the public generally is admitted may be highly detrimental to the defendant. Such is the case where the public is aroused and hostile to him. At other times the very victim of the defendant's alleged conduct may suffer such embarrassment and humiliation as to cause a mental disintegration on the witness stand.

I think it should be left very largely to the discretion of the trial judge whose responsibility it is to conduct and govern the trial in the interest of fair play. Certainly if the defendant is permitted to retain a reasonable number of relatives or friends of his own choosing that insures him a public trial. Some defendants may pack a courtroom with relatives and friends whose very grimaces and hostile expressions may cause the mind of a sensitive or nervous witness to centrifugate. The law presents many cases where a proper balance between protecting the rights of the State in its prosecution of a case and the rights of the defendant must be struck. I think this balance is attained in certain cases by excluding all except a reasonable number of friends or relatives of either prosecutrix or defendant. In this case it appears *all* were excluded. Under our previous cases that was error. The error persisted only for a short time although its results may have persisted longer. I doubt if defendant was prejudiced thereby. But the right being guaranteed by the Constitution, it is one which a defendant may demand, and its denial is presumed prejudicial. It is only because I think there was a substantial period of trial procedure and an act of substantial significance performed while this order was in effect that I concur in the results. Otherwise, I should fully dissent.

McDONOUGH, Justice.

I concur in the result for the reasons stated by Mr. Justice WOLFE in his concurring opinion.

PRATT, Justice.

I concur in the result for the reasons stated by Mr. Justice WOLFE in his concurring opinion.