In the Matter of United Press Associations et al., Appellants, against Francis L. Valente, Individually and as Judge of the Court of General Sessions of the County of New York, Respondent.

First Department, March 13, 1953.

*J. Howard Carter* of counsel (*James W. Rodgers, John R. Schoemer, Jr.,* and *Andrew L. Hughes* with him on the brief; *Townley, Updike & Carter,* attorneys), for News Syndicate Co., Inc., appellant.

*E. Douglas Hamilton* of counsel (*Brown, Cross & Hamilton,* attorneys), for New York Herald Tribune, Inc., appellant.

*M. Marvin Berger* for New York Post Corp., appellant.

*Thomas A. Diskin* of counsel (*Harry H. Van Aken, C. Coudert Nast* and *William E. Flannery* with him on the brief; *De Witt, Van Aken & Nast,* attorneys; *Baker, Hostetler & Patterson* of counsel), for United Press Associations, appellant.

*Charles Henry* for Hearst Consolidated Publications, Inc., and another, appellants.

*Frank S. Hogan, District Attorney* (*Richard G. Denzer, Charles W. Manning* and *Stuart G. Swartz* of counsel), for respondent.

*Charles Ballon* (*Howard M. Squadron* and *Jacob M. Usadi* with him on the brief), for New York Civil Liberties Union, *amicus curiæ.*

VAN VOORHIS, J. Minot F. Jelke has been convicted in the Court of General Sessions of conspiracy to commit acts injurious to public morals under section 580 of the Penal Law, and of being a male person living on the proceeds of prostitution under section 1148 of the Penal Law. This appeal is not from any order or judgment rendered in the Jelke trial. He is not a party to this proceeding, which was instituted under article 78 of the Civil Practice Act by various newspaper publishers and associations during the trial, and before the People had rested. This proceeding is in the nature of an application for a writ of prohibition, brought upon the theory that the Judge presiding at the Court of General Sessions exceeded his jurisdiction in excluding the press and other members of the general public from the courtroom for the duration of the People's case, except such persons as the defendant deemed necessary for his comfort and protection, including friends or relatives. Excerpts from the record of the criminal trial introduced into the article 78 proceeding indicate that defendant's counsel objected to this direction, and particularly to the exclusion of the press, as an infringement of his right to a public trial. He is not before the court upon this appeal, nor would it normally be expected that an accused, while being tried in the

Court of General Sessions, would petition the Supreme Court to intervene in the criminal trial in order to challenge a ruling which, if erroneous, could be reviewed by him on appeal from a judgment of conviction, based upon the entire record. We are now asked to decide, at the instance and in the interest of these newspaper publishers, whether the accused had a public trial, and to render decision thereon in the absence of defendant and upon excerpts from the evidence.

If the ruling at General Sessions excluding the public during the prosecution's case was unwisely made, prohibition does not lie if General Sessions had power to make it, nor does it follow, if that court's power was exceeded, that the Supreme Court should, at the instance of persons having no direct interest in the result, exercise discretion to intervene in the criminal trial by changing the course of its proceedings during its progress. Prohibition is an unusual remedy, rarely invoked, the granting or withholding of which rests in the sound discretion of the Supreme Court (*People ex rel. Livingston* v. *Wyatt,* 186 N. Y. 383, 393). It is not granted as a matter of course wherever jurisdiction has been exceeded by another court. Such errors are ordinarily reviewed on appeal from the determination of the court whose jurisdiction has been exceeded. Setting aside the judicial act of one judge by another of co-ordinate jurisdiction is avoided, wherever possible, as not conducive to the orderly administration of justice (*People ex rel. Rothensies* v. *Searles,* 229 App. Div. 603; *People ex rel. Howard* v. *Searles,* 229 App. Div. 819; *Matter of Dodge* v. *Supreme Court,* 249 App. Div. 103, affd. 276 N. Y. 444; *People* v. *Cunningham,* 3 Parker Cr. Rep. 531; *People* v. *Ackerson,* 166 Misc. 130; *People ex rel. Ackerson* v. *Warden of City Prison,* 167 Misc. 175; cf. *People ex rel. Glendening* v. *Glendening,* 259 App. Div. 384, 387).

In order to succeed upon this appeal, appellants must have had status to institute this proceeding and, if so, they must establish that Jelke did not have a public trial, at least insofar as they are concerned, and that the discretion of the Supreme Court should have been exercised by altering the ruling at General Sessions. In view of the doubt which we entertain that appellants had status to maintain this proceeding, and of our conclusion that the Supreme Court ought to have refrained, in any event, from issuing an order of prohibition as matter of discretion, we do not reach the question of whether or not Jelke had a public trial as such a trial is understood in law.

The contention that appellants, as members of the public, had the right to attend throughout the trial, is so closely interwoven with the position taken by the accused that he was denied a public trial, that it is impossible to decide the one issue without materially affecting the disposition of the other. The decisions are practically unanimous that a judgment of conviction is reversed on appeal by the defendant, without any affirmative showing of prejudice, if he has not had nor waived a public trial. In that event prejudice is presumed (*Matter of Oliver*, 333 U. S. 257; *Tanksley* v. *United States*, 145 F. 2d 58; *United States* v. *Kobli*, 172 F. 2d 919; *Davis* v. *United States*, 247 F. 394; *Wade* v. *State*, 207 Ala. 1, 241; *People* v. *Hartman*, 103 Cal. 242; *Tilton* v. *State*, 5 Ga. App. 59; *People* v. *Murray*, 89 Mich. 276; *State* v. *Keeler*, 52 Mont. 205; *State* v. *Hensley*, 75 Ohio St. 255; *State* v. *Osborne*, 54 Ore. 289; *State* v. *Jordan*, 57 Utah 612). Not every ruling by a trial court which excludes some persons from the courtroom constitutes the deprivation of a public trial; nevertheless serious question might arise concerning whether it could be held that Jelke's trial was public insofar as he was concerned if it was not public also insofar as the newspapers were concerned.

Section 4 of the Judiciary Law, containing the language that "every citizen may freely attend" the sittings of "every court within this state", on which the present proceeding is based, is *in pari materia* with section 8 of the Code of Criminal Procedure and section 12 of the Civil Rights Law. These sections are to be read together. Each of them is derived from the Revised Statutes of 1829, the latter two being stated in the Revisers' Report to have been patterned on the Sixth Amendment to the Constitution of the United States, and the former to have been declaratory of the existing law. All had in mind the protection of persons accused of crime, by preserving the liberties of the citizen or subject as formulated in the case law, or in Colonial bills of rights and charters and in those of the mother country.

In numerous cases in this country and in England the question has arisen whether a defendant's right to a public trial has been infringed, on appeals by convicted defendants, but the research of the court and the industry of counsel have disclosed none where a court has been set in motion by a third party, not directly affected by the result of the criminal trial, seeking admittance as a spectator upon the ground that the trial was not being conducted publicly as required by law.

The public have an interest in the protection of the liberties specified in the Bill of Rights. That includes not only the right to " a speedy and public trial ", but also one " by an impartial jury ", and the right of an accused " to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; and to have compulsory process for obtaining witnesses in his favor " (Civil Rights Law, § 12). A member of the public not directly affected, however, could not intervene in the trial of another person to vindicate the latter's right to an impartial jury or to be confronted with the witnesses against him. The public interest in a public trial stems not from a right of every citizen to be a spectator, but. consists in keeping the fabric of society from being injured by the destruction of civil rights of the individual. Public interest in such cases is secured by giving to persons accused of crime the opportunity to vindicate their own basic rights for their own protection. Freedom of the press is not involved.

Members of the public have, it is true, a right to apply to the courts to compel observance of the election laws (*Matter of McCabe* v. *Voorhis,* 243 N. Y. 401; *People ex rel. Daley* v. *Rice,* 129 N. Y. 449), and to require observance of the civil service laws in the selection of public officers or employees (*Matter of Cash* v. *Bates,* 301 N. Y. 258; *Matter of Andresen* v. *Rice,* 277 N. Y. 271). Newspaper publishers and other members of the public have been allowed to mandamus custodians of public records to present them for inspection if they are open to the public (*McCoy* v. *Providence Journal Co.,* 190 F. 2d 760; *Bend Pub. Co.* v. *Haner,* 118 Ore. 105; *Holcombe* v. *State,* 240 Ala. 590), except that such permission is not granted where they have been sealed under court rule (*Danziger* v. *Hearst Corp.,* 304 N. Y. 244, 248–249). The case last cited indicates that there is a broader rule making power, respecting court procedure, than would appear from the discussion in the dissenting opinion concerning the effect of section 20 of article VI of the State Constitution formulated in 1846.

The power of a citizen to invoke the aid of courts in independent proceedings to compel public officers to perform their duties, does not extend to judicial officers in the performance of their functions in controversies between litigants in civil or criminal actions. The present situation more nearly resembles that in cases such as *Schieffelin* v. *Komfort* (212 N. Y. 520, 530), where it was said: " The court has no inherent power to right a wrong unless thereby the civil, property or personal

rights of the plaintiff in the action or the petitioner in the proceeding are affected. The rights to be affected must be personal as distinguished from the rights in common with the great body of people.''

Neither the newspapers nor other members of the public are persons having an implied remedy to enforce a statutory cause of action by being members of a class for whose special interest or protection the statute was enacted (*Karpeles* v. *Heine*, 227 N. Y. 74; *Schmidt* v. *Merchants Despatch Transp. Co.*, 270 N. Y. 287).

Having a public trial is not more fundamental than the right of one charged with a felony to trial by jury, yet section 2 of article I of the New York State Constitution states that '' A jury trial may be waived by the defendant in all criminal cases, except those in which the crime charged may be punishable by death ''. If an accused can waive trial by jury, he can waive a public trial which has also been ordained for his own protection. Many decisions confirm this power of waiver of the right to a public trial (*People* v. *Miller*, 257 N. Y. 54, 60–61; *United States* v. *Sorrentino*, 175 F. 2d 721; *United States* v. *Kobli*, 172 F. 2d 919, *supra; Keddington* v. *State*, 19 Ariz. 457; *People* v. *Swafford*, 65 Cal. 223; *People* v. *Harris*, 302 Ill. 590; *Dutton* v. *State*, 123 Md. 373; *Carter* v. *State*, 99 Miss. 435; *State* v. *Smith*, 90 Utah 482). If the trial court decides to act on such a waiver, a spectator cannot be heard to insist that the trial must be public, any more than a newspaper could object to being deprived of the opportunity to publish the testimony at a trial where a trial has been avoided by a plea of guilty. '' The requirement of a public trial is for the benefit of the accused '', says Judge Cooley (1 Cooley on Constitutional Limitations [8th ed.], p. 647), '' that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions    *    *    *.'' This passage was quoted with approval in *People* v. *Hall* (51 App. Div. 57, 62) as applicable to what is now section 4 of the Judiciary Law. The Court of Appeals in *People* v. *Miller* (257 N. Y. 54, 60, *supra*) referred to '' the privilege of a public trial assured by the statute to one accused of crime '', citing both section 8 of the Code of Criminal Procedure and section 4 of the Judiciary Law. It is the latter section which appellants contend was violated by the Court of General Sessions in the Jelke trial, and which they rely upon as having been enacted

to give to them an independent right to institute this special proceeding. It is quite evident that these two sections were regarded in the *Miller* case as properly construed together. If the order appealed from were to be reversed, it might be contended that the reversal established that Jelke had been denied his right to a public trial.

When the predecessor of section 4 of the Judiciary Law was enacted in the Revised Statutes of 1829 (Part 3, ch. 3, tit. 1, § 1), it contained only the statement, said by the revisers to be declaratory of the existing law, that "The sittings of every court within this state, shall be public, and every citizen may freely attend the same." In 1877 it was transposed, in the same form, into section 5 of Throop's Code of Civil Procedure. Not until 1879 were the controversial exceptions engrafted, viz., "except that in all proceedings and trials in cases for divorce on account of adultery, seduction, abortion, rape, assault with intent to commit rape, criminal conversation, and bastardy, the court may, in its discretion, exclude therefrom all persons who are not directly interested therein, excepting jurors, witnesses, and officers of the court." (L. 1879, ch. 210.) Sodomy was added by section 3 of chapter 649 of the Laws of 1945. The breadth of these exceptions does not need to be considered here, since no decision is being made concerning whether Jelke's trial was public within the meaning of the law, but, in view of appellants' literal interpretation of the words, "every citizen may freely attend the same" as conferring an independent right of action upon the newspapers, it is pertinent to observe that this section "does but follow out the established course of the common law", as said by Mr. Justice STORY concerning the Sixth Amendment to the Constitution of the United States (2 Story on Constitution [5th ed.], p. 571), and that it was intended for the benefit of litigants, as a direction to trial courts to admit people without arbitrary discrimination, so as to comply with the requirements of what had been understood traditionally as a public trial. The intention could hardly have been to vest in each citizen a cause of action to compel his admittance. If so, there have been sensational trials that could not have been conducted in any courthouse in the United States. Other instances where it has been customary to exclude members of the public, which could not be done under appellants' strict construction of this statute, are enumerated in the annotation to the case of *Tanksley* v. *United States* (145 F. 2d 58, *supra*, at 156 A. L. R. 276–279), such as the prevention of disorder,

prevention of emotional disturbance of persons testifying, danger of epidemic through the spreading of Spanish influenza, the barring of young children where the testimony is liable to be indecent or salacious, and exclusion of persons who there is reason to believe may retaliate against witnesses for testifying to the truth. In an often-quoted statement, supported by many citations, it was said that by a public trial it is "not meant that every person who sees fit shall in all cases be permitted to attend criminal trials" (1 Cooley on Constitutional Limitations [8th ed.], p. 647). Speaking of the same statute, it was said in *People* v. *Hall* (51 App. Div. 57, 61, *supra*): "If a literal interpretation is to be given to these provisions, then the trial judge is utterly without any discretion whatever aside from the excepted cases." In *Hanna* v. *Mitchell* (202 App. Div. 504, 513) this court quoted as follows from an opinion in a previous case written by VAN BRUNT, J.: "'One of the powers which has always been recognized as inherent in courts, which are protected in their existence, their powers and jurisdiction by constitutional provisions, has been the right to control its order of business and to so conduct the same that the rights of all suitors before them may be safeguarded. This power has been recognized as judicial in its nature, and as being a necessary appendage to a court organized to enforce rights and redress wrongs. * * * The courts are not the puppets of the Legislature. They are an independent branch of the government, as necessary and powerful in their sphere as either of the other great divisions. And while the Legislature has the power to alter and regulate the proceedings in law and equity, it can only exercise such power in that respect as it has heretofore exercised.'" (*Riglander* v. *Star Co.*, 98 App. Div. 101, 104, 105, affd. 181 N. Y. 531.) (Cf. paper by former Justice ADOLPH J. RODENBECK on "The Power of the Supreme Court of the State of New York under the Constitution to Regulate its own Procedure", Report of New York State Bar Association, Vol. XLI [1918], p. 242.)

The language of section 4 of the Judiciary Law would not be held to prevent a trial judge from excluding from the courtroom business competitors, for example, in a trial involving secret processes or trade secrets, to which they were not parties or witnesses (*Du Pont Powder Co.* v. *Masland*, 244 U. S. 100, 103, HOLMES, J.; *National Starch Products* v. *Polymer Industries*, 273 App. Div. 732, 739). It can hardly be doubted that this statute would be held not to confer an independent right

on all comers, in spite of its literal language, to be admitted to a trial involving secrets pertaining to the utilization of atomic energy. This court recently upheld such procedure limiting access of representatives of bail bond companies to the Magistrates' Courts (*Matter of New York State Licensed Bail Agent's Assn.* v. *Murtagh,* 279 App. Div. 851, motion for leave to appeal denied 303 N. Y. 1009).

This discussion has not been for the purpose of considering whether the ruling excluding the public from the courtroom during the People's case prevented Jelke from having a public trial — a question that should be reserved pending an appeal from his conviction — but in order to demonstrate that the contention that section 4 of the Judiciary Law confers a cause of action upon each member of the general public, in a case such as this, is strained and untenable. It is apparent that during the fifty years between 1829 and 1879, when no exceptions were contained in this statute, it was not construed to do more than to provide, in the interest of the parties, for public trials as they have been commonly understood, and that the amendment in 1879, although in some respects inartistic for the purpose, was intended to be declaratory of the existing common law (as the Revisers' Report said was the case with the original statute when it was incorporated in the Revised Statutes of 1829), and that it was not proposed to render procedure in the trial courts so rigid as seriously to impair their usefulness in meeting situations as they arise. " Being merely declaratory of the common law these statutes are to be construed as near to the rule and reason of the common law as may be (Suth. Stat. Const., § 290) " (*People* v. *Miller,* 143 App. Div. 251, 254, affd. 202 N. Y. 618). The latter case also held that it is immaterial whether, for convenience in codification, the rule has been stated in two sections instead of in one. By giving the direction that trials should be public, in the accepted legal tradition, it can hardly have been meant to give rise to collateral litigation by the spectators, which might even be among themselves if a courtroom were too small to accommodate all desiring to attend, and would, in any case, be an attempt, by persons untouched by the result, to overrule judicial acts during the conduct of a trial, affecting, or which might affect, a substantial right of an accused. The direction that trials in all courts shall be public and that every citizen may freely attend the same, even if construed in the most literal sense, was given to judges concerning how they should conduct

their courts in the interest of parties before the court, and not designed to create causes of action in outsiders to meddle in the administration of justice between litigants while trials are in progress. If errors are committed, the policy of the law is to correct them, insofar as possible, on appeal (*People* v. *Gersewitz,* 294 N. Y. 163; *People ex rel. Livingston* v. *Wyatt,* 186 N. Y. 383, 393, *supra*; *People* v. *Sadness,* 300 N. Y. 69). In *Matter of Sturm* (152 Md. 114, 121, 122) the Maryland Court of Appeals stated: '' The basic theory of the contention is that representatives of the press have a right to attend and report trials of persons accused of crime  *  *  *. The constitutional right of the accused to a public trial is a privilege intended for his benefit.''

The appellants' briefs, and in some respects the dissenting opinion, appear to assume that coverage by the press of the Jelke trial is the most important point at issue. On the contrary, the vital question, which was before the Court of General Sessions, was whether Jelke was guilty of the crimes charged in the indictment. The fundamental public interest is that those issues be rightly tried and decided.

If it were to be held that appellants have status to maintain this proceeding, Special Term may well have thought that, regardless of the power of General Sessions to make the direction excluding the public, or its wisdom when made, even-handed justice in the criminal trial would be better served if the Supreme Court refrained from incisive criticism of a court of co-ordinate jurisdiction, upon an inflammatory subject, soon before the jury retired for its deliberations. There may be possible instances where one or more members of the public are excluded erroneously from a courtroom during a criminal trial without thereby violating the defendant's right to a public trial nor are we called upon at this stage to decide whether or not this is such a case; a ruling as important as one which excluded all representatives of the press, however, during the prosecution's case, could hardly be made without creating an issue, not decided now, concerning whether the right of the accused to a public trial was infringed. In view of such a potential issue, which may be raised upon appeal from the judgment of conviction, it follows that a concurrent, collateral proceeding, such as this, to which the defendant is not a party and which is based upon fragments of the record, does not present a suitable occasion to decide whether error was committed at General Sessions in excluding appellants from part of the trial.

We hold that, under the circumstances of this case, appellants lacked the right to institute this proceeding, and further, even without regard to whether this proceeding is maintainable by appellants and irrespective of the power of the Court of General Sessions to make the ruling in dispute, that the Supreme Court, in the exercise of its discretion, should have declined to alter the ruling at General Sessions during the course of the criminal trial.

The order appealed from should be affirmed, with costs.

PECK, P. J., and BERGAN, J. (dissenting). Since the Constitutional Convention of 1846 settled the long controversy over the regulation of court procedure, the general power of the Legislature to prescribe the course of proceedings in a court has been placed beyond all doubt. The authority to " regulate " the " proceedings " in law and equity is continued in the present Constitution (art. VI, § 20).

The power thus broadly stated in its constitutional frame has been broadly exercised by the Legislature in respect of the open character of judicial proceedings.

" The sittings of every court within this state shall be public, and every citizen may freely attend " is the legislative statement of a public policy of New York and a mandate binding on all its judicial tribunals (Judiciary Law, § 4).

The exceptions which the Legislature made are not pertinent to the kind of trial before the Court of General Sessions in this case. Specifically, this was not a " case for * * * sodomy " and did not take on that character because as an incident to the cross-examination of one witness and as a challenge to her credibility she was asked about a sodomous act. The court was, therefore, obliged as a matter of law to keep the courtroom open to the public.

The citizens, and thus the press, had the right given by law to attend the trial at General Sessions. The excluded petitioners had a mature legal right to admission to the sittings of the court. When this right was denied by the Judge of General Sessions, petitioners were free to seek a legal remedy to redress the denial of an access given them by law.

The remedy that seems to us both available and appropriate, between the petitioners who were denied admission to the trial and the judge who denied the admission, was one of the measures of relief provided by article 78 of the Civil Practice Act. Indeed, no other remedy was available and we see no other way or means by which petitioners could test or enforce their legal

rights. However extraordinary the remedy of prohibition or mandamus may be, they are not so extraordinary as to be unavailable when no other remedy exists. To say that they are not available to petitioners here is tantamount to saying that the court will remain deaf to the assertion of their legal rights.

Despite the discussion in the majority opinion of inappropriateness of the remedy of prohibition, we understand the ruling of the court to be based on a holding that the citizenry are accorded no rights under section 4 of the Judiciary Law. In other words, that it is a superfluity, an unnecessary and meaningless repetition, though in broader terms, of the accused's right to a public trial. As so construed, the public policy of the statute becomes nothing more than the personal privilege of the defendant in a criminal trial.

Assimilating the public's right to attend the sittings of its courts to the accused's right to a public trial, the majority opinion poses the issue on this appeal thusly: '' We are now asked to decide, at the instance and in the interest of these newspaper publishers, whether the accused had a public trial ''. Similarly the burden upon petitioners is stated to be to '' establish that Jelke did not have a public trial ''.

If we concurred in this conception of the statute and statement of the issue, we would concur in the conclusion that petitioners had no standing to raise the question. But in our view section 4 of the Judiciary Law conferred rights in the public which are independent of any right of the accused, and we are not prepared to assume that they are synonymous. It may well be that the defendant Jelke was protected in his right to a '' public '' trial by being allowed the attendance of relatives and friends and that his rights were not violated by the exclusion of the press. The decision in *People* v. *Hall* (51 App. Div. 57) passed upon such an issue and that was the extent of the holding. What was otherwise said in that case is dicta.

The statutory right of public attendance at a trial is historically and now in aid of a fair trial for an accused, but it is more than that. It is an expression of public policy toward the judicial process. Its value in the course of the administration of justice is not limited to the result reached in any individual case. The policy rests on the desired open nature of judicial action. Anyone is free to see what a court does and to follow the rationale of decision. One aspect of its expression in New York may be seen when attention is turned to section 22 of

article VI of the Constitution. This deals with judicial decisions and with judicial opinions. In plain language, it requires their public availability. It does more. It directs that they shall be " free for publication by any person."

All that we are concerned with in this case is the right of the public generally to attend freely the sittings of the court. If section 4 of the Judiciary Law conferred that right, as it plainly does, the right exists irrespective of the conviction or acquittal of the defendant. Not only do we think petitioners were not relegated to await and rely upon some possible appeal by the defendant, but we think that any appeal by him would not raise and likely would not determine the rights of petitioners. They were thus entitled to enforce their rights by the only means at their disposal.

This does not mean, *reductio ad absurdum*, that courtrooms must be scaled to accommodate a multitude, or that individuals who would put the courtroom to improper use or children in certain cases may not be excluded, or that the court must pause to entertain the application of every idle spectator. This is not a case in which the trial court accepted the mandate of general openness of the proceedings and made particular exclusions, but on the contrary is a case where it directed a general exclusion and granted only particular admissions. This case, therefore, presents for decision a general principle, a determination of the law and guidance of the courts, and warrants a ruling.

The issue on the merits of this appeal is whether courts have a discretion in respect to a general exclusion of the public which is not limited by the limited discretion granted by the statute. We would be glad to have it so, but see no point in the Legislature taking the pains to specify the particular cases in which the courts shall have a discretion if some broader discretion was either inherent or intended.

The statute is in no sense ambiguous. Presumably by enumerating specific exceptions to the general rule stated, the Legislature intended no other exceptions. If it had, it could easily enough have expressed such intent either by more particularity or generality. It would have been easy to include, for example, cases of prostitution, which would have covered the present case, or cases involving testimony as to sexual crimes.

We feel constrained to take the statute according to its clear import. If the law making body wants to broaden or change it, it may do so instantly. It is not for the courts, even prompted

by the best of motives, to usurp the legislative function by interpretation.

It is not amiss to make the observation that cases involving prostitution are not uncommon to the courts and have been with us for years. Until now, it has never occurred to either the courts or the Legislature to bar the public from them. Perhaps the public should be barred. That is not for us to say; but a question of importance does arise as to whether individual judges may exercise a varying individual discretion, some opening and some closing their courts in the same kind of cases. No showing has been made here which would distinguish the present case in any moral way from the run of prostitution cases. If for other reasons there appears to be some undue interest in the case, it would hardly justify an exception to the ordinary rule. The exception made rather flies in the face of basic concepts of the impersonality of the law and equal treatment of all without fear or favor.

The order appealed from should have been reversed and the application granted.

Dore and Callahan, JJ., concur with Van Voorhis, J.; Peck, P. J., and Bergan, J., dissent and vote to reverse, in opinion.

Order affirmed. Settle order on notice providing for disbursements.