STATE of Utah, Plaintiff and
Respondent,

v.

Gary L. HARDING, Defendant
and Appellant.

No. 16756.

Supreme Court of Utah.

July 20, 1981.

Ginger L. Fletcher, Salt Lake City, for
defendant and appellant.

David L. Wilkinson, Arthur A. Allen, Jr.,
Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

The defendant, Gary L. Harding, appeals
his jury conviction and sentence for the
crime of escape, a violation of § 76–8–309,
U.C.A.1953.

On June 24, 1979, the defendant was in
custody at the Utah State Prison. At approximately 10:30 a. m. the officers at the
prison conducted a special count of the inmates and discovered that the defendant
was missing from his cell. At approximately 1:00 p. m. on the same date he was
apprehended by Salt Lake County Sheriff's
deputies in Granger, Utah. Also apprehended were Delmont L. Gentry and
Selmar R. Purcell who were also missing
from their cells at the prison. After a joint
trial to a jury, all three defendants were
convicted.

The defendant Harding alleges his rights were violated during the trial in that: (1) the jury was not instructed to consider the defense of compulsion, and (2) the courtroom was cleared of all spectators for a short period of time.

In the consideration of the first assignment of error we start with the proposition that the defendant's right to present all competent evidence in his defense is a right guaranteed by the due process clause of our State Constitution, Art. I, Sec. 7, as well as our Federal Constitution, 14th Amendment. It is also axiomatic that where the defendant has asserted a defense to justify or excuse the criminal charge, and where there is reasonable basis in the evidence to support it, the viability of the defense then becomes a question of fact and the jury should be charged regarding it. Where, however, there is no reasonable basis in the evidence to support the defense or its essential components, it is not error for the trial judge to either refuse to instruct the jury as to the defense, or to instruct them to disregard it. *State v. Eagle*, Utah, 611 P.2d 1211 (1980); *State v. Brown*, Utah, 607 P.2d 261 (1980).

The question for this Court to determine is whether there was sufficient credible evidence in support of the defense of compulsion to justify instructing the jury thereon. In *State v. Castillo*, 23 Utah 2d 70, 457 P.2d 618, 619 (1969), this Court stated the following guidelines with regard to when a jury should be instructed as to a defense asserted by a defendant:

If the defendant's evidence, although in material conflict with the State's proof, be such that the jury may entertain a reasonable doubt as to whether or not he acted in self-defense, he is entitled to have the jury instructed fully and clearly on the law of self-defense. Conversely, if all reasonable men must conclude that the evidence is so slight as to be incapable of raising a reasonable doubt in the jury's mind as to whether a defendant accused of a crime acted in self-defense, tendered instructions thereon are properly refused. [457 P.2d at 620.]

Although the court in *Castillo* was concerned with an instruction on self defense, the principles there enunciated apply equally to the propriety of an instruction on the defense of compulsion. In reviewing the evidence presented at the trial, we are of the opinion that it was incapable of raising a reasonable doubt in the jury's mind as to whether defendant was compelled to escape.

The evidence which the defendant relied upon for his defense of compulsion was his own testimony and the other escapees to the effect that the defendant was in danger of attack from other prisoners because he allegedly helped Purcell after he was attacked and stabbed by those prisoners in a skirmish occurring approximately one month before their escape. Defendant also testified that he had requested to be transferred to the maximum security cellblock in order to avoid the possibility of an assault. The attack on Purcell, however, was never officially reported to the prison authorities.

Section 76–2–302, U.C.A.1953 provides in pertinent part that:

(1) A person is not guilty of an offense when he engaged in the proscribed conduct because he was coerced to do so *by the use or threatened imminent use* of unlawful physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would not have resisted. [Emphasis added.]

To avail himself of the defense of compulsion a defendant must present evidence that he was compelled to escape by threat of *imminent* violence which he could not have reasonably resisted. The main evidence adduced at trial which defendant urges would support his assertion that he was in imminent danger was his following testimony:

Q. And what were you afraid would happen to you if you didn't leave that day?

A. I really didn't know what was going to happen. It was—you know—situation where I just didn't know.

This testimony does not support a finding of any threat of imminent use of unlawful force upon the defendant. It lacks the specificity which is necessary to establish the existence of an immediate threat. It indicates nothing more than that the defendant was in doubt about the intentions of the prisoners who he feared. For a threat to be imminent, it would have to appear that it had been communicated to the defendant that he would be subjected to physical force presently. The incident which occurred which gave rise to the alleged threats against this defendant occurred approximately one month before his escape. There is nothing in the record to show that there was any more of a threat against him on the particular day of his escape than there had been during any one of the days which had elapsed since the occurrence of the incident. The testimony of the two co-defendants was likewise indefinite. None of that testimony established any specific detail of the alleged threats. See *State v. Milum*, 213 Kan. 581, 516 P.2d 984 (1973), where it was held that a threat directed at some indefinite time in the future is not an imminent threat and is not a defense to the charge of escape from prison. See also *People v. Richards*, 269 Cal.App.2d 768, 75 Cal.Rptr. 597 (1969). All of the testimony presented was general and vague in nature and it did not rise to the level of establishing the threat of the imminent use of physical force against the defendant. The trial judge therefore properly admonished the jury to disregard that defense.

■ Defendant next asserts that his right to a public trial was abridged when the trial judge cleared the courtroom of all spectators for a short period. It appears that following the prosecution's presentation of its case in chief and after the noon recess, the court received a phone call from the Murray Police Department that a social worker at the prison had phoned that department to warn that the defendant would try to escape that afternoon. Based upon that information, the trial judge cleared the courtroom and brought in two additional sheriff's deputies. Counsel for the defendant objected and asked to be then heard out of the presence of the jury, but the court overruled the objection. However, when the presentation of evidence concluded a short time later the court allowed the defendant's counsel to be heard on his objection, and he also made a motion for a mistrial. The judge then explained that he had received the aforementioned phone call and that it was the basis for his order of closure. He denied the motion for mistrial.

The defendant's right to a public trial is guaranteed by our State Constitution, Art. I, Sec. 12, which reflects the content of the Sixth Amendment to our Federal Constitution. The right is important to an accused since it provides certain safeguards against a miscarriage of justice. The presence of the public may keep the prosecution and judge within their proper bounds, or a member of the public may step forward to aid an accused where a witness for the prosecution has perjured himself, and an accused is entitled to the presence of family and friends when facing serious criminal charges. The United States Supreme Court emphasized the importance of the right to a public trial in the case of *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), where that Court set aside a state conviction of a witness for contempt where the proceedings were *in camera* and stated:

> In view of this nation's historic distrust of secret proceedings, their inherent dangers to freedom, and the universal requirement of our federal and state governments that criminal trials be public, the Fourteenth Amendment's guarantee that no one shall be deprived of his liberty without due process of law means at least that an accused cannot be thus sentenced to prison. [333 U.S. at 273, 68 S.Ct. at 507.]

This Court has similarly emphasized the importance of an accused's right to a public trial. In *State v. Jordan*, 57 Utah 612, 196 P. 565 (1921), we stated:

> Aside from the inherent power of every court, in rare instances, to exclude part of the public, as in such extreme areas where its presence would interfere with

the due and orderly procedure in the progress of the trial, or where the testimony is of such a character as to shock the sense of decency or tend to degrade the public morals, more especially those of the young, the exclusion of the public should be, and generally is, held to be violative of the constitutional rights of the accused. [57 Utah at 615, 196 P. at 567.]

As indicated in that case, the defendant's right to a public trial is not without limitation. His right must be balanced against other interests which may justify the closing of the courtroom. One of those interests is the safety of those who may be present therein. The risk of violence is a well recognized justification for an order of closure. See generally 48 A.L.R.2d 1436 (1950); *U. S. ex rel. Lloyd v. Vincent*, (2d Cir., 1975) 520 F.2d 1272. Exclusion of the public from the courtroom where violence might be expected must be governed by the sound discretion of the trial judge based upon the facts and circumstances confronting him. This discretion, however, should be sparingly exercised and limited to those situations where necessary to further the administration of justice. *United States v. Eisner*, (6th Cir., 1976) 533 F.2d 987, cert. den. 429 U.S. 919, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976), where it was held that it was not an abuse of discretion to exclude spectators except members of the press for a limited portion of the trial where the witness expressed a fear of persons in the courtroom.

The defendant admittedly had escaped from prison and it was not unreasonable for the judge to expect that based on the phone call from the prison, the defendant might again attempt an escape. Such an attempt could well have created a risk of danger to court personnel and spectators when the guards of the defendants took action to foil their attempt. Under these circumstances the lower court did not err in clearing the courtroom. Although it would have been preferable for the judge before making his order to have held a hearing on the propriety of the closing of the courtroom where a record could have been made, defense coun-

sel could have been heard and other alternatives explored, we cannot say that by failing to do so he abused his discretion. *U. S. ex rel. Lloyd v. Vincent*, supra; *United States v. Eisner*, supra.

The judgment is affirmed.

HALL, C. J., and STEWART and OAKS, JJ., concur.

MAUGHAN, J., heard the arguments but died before the opinion was filed.