THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BARRON JONES, Appellant.

Second Department, September 28, 1981

APPEARANCES OF COUNSEL

*William E. Hellerstein (Philip L. Weinstein* of counsel), for appellant.

*Eugene Gold, District Attorney (Michael L. Boxer* of counsel), for respondent.

**OPINION OF THE COURT**

TITONE, J.

After a jury trial, the defendant was convicted of attempted rape in the first degree and sexual abuse in the first degree. The principal issue raised on appeal is whether the Trial Judge violated the defendant's right to a public trial when he cleared the courtroom of all spectators, including the defendant's family, during a portion of the alleged victim's testimony.

The complaining witness testified at the trial that on December 6, 1977 at about 8:30 A.M. she left her Manhattan apartment to go to work in East New York. She traveled by subway to the Broadway and East New York station, where she disembarked to change trains. She boarded the next to last car of a CC train and sat down.

Initially she did not see anyone else in the car. However, shortly after the doors closed, she felt someone's presence, looked up, and saw a man identified as the defendant standing very close to her. He leaned over her. When she attempted to push him away, defendant grabbed her arm, yanked her out of her seat and started dragging her into the last car of the train. She began to scream, at which point defendant threatened to kill her if she did not quiet down.

Before commencing her description of what occurred next, the witness asked permission to make a request. Following an off-the-record discussion, the prosecutor requested, on-the-record, that the courtroom be cleared. The witness was at the point in her testimony where it was necessary to describe the explicit details of the alleged rape. The prosecutor indicated that up to that point the witness had appeared very upset and had cried several times. The prosecutor stated that the testimony was very embarrassing to the witness, and that without the exclusion of spectators he was not sure if the witness would be capable of completing her story in a coherent fashion.

Defense counsel did not disagree with the prosecutor's description of the difficulties the witness was having. He indicated that he had no objection to the exclusion of spectators, excepting defendant's family. In regard to the latter, defense counsel strenuously maintained that defendant was entitled to the presence and support of members of his family throughout the trial.

The court ruled that all spectators, including defendant's family but excluding court personnel and persons "connected with this case", would be excluded from the courtroom during the witness' description of the incident itself. The courtroom would be reopened to the public for the remainder of the trial.

Upon returning to the stand, the witness testified that after defendant dragged her into the last car, he threw her face down onto the floor of the subway car. Defendant ripped off her pants and proceeded to engage in sexual conduct. Without going into the actual testimony about the sexual assault, suffice it to say that it was necessarily explicit in detail.

When defendant was finished he walked back into the other car. A few seconds after his departure the witness sat up; she was crying and in a state of confusion, wondering what she should do. Her slacks were on the floor, her panties around her ankles. At that point, defendant, escorted by a transit police officer, Officer Byrne, entered the car. The complaining witness screamed that she had been raped, and defendant was arrested.

The prosecution called several more witnesses, including the transit officer who arrested the defendant. Expert testimony was also presented.

Defendant testified that the complaining witness approached him on the train, and propositioned him. The two of them walked into the last car of the train, and the complaining witness pulled down her slacks and got on her hands and knees. Defendant then got down on his knees, and while getting himself ready, prematurely ejaculated. The woman was moaning, and blacked out. When she failed to respond to his attempts to wake her up, defendant got up and walked to the next car, where he met Transit Officer Byrne.

### DETERMINATION ON APPEAL

The right to a public trial is deeply rooted in the common law *(People v Jelke,* 308 NY 56, 61-64; *Matter of Oliver,* 333 US 257, 266-271). In New York that right has been guaranteed in statutory law since 1829 *(People v Jelke, supra,* p 62; see Civil Rights Law, § 12; Judiciary Law, § 4). It has a constitutional basis in the Sixth Amendment, made applicable to the States through the due process clause of the Fourteenth Amendment *(Duncan v Louisiana,* 391 US 145; *Matter of Oliver, supra; People v Jones,* 47 NY2d 409, 411, n 1).

Commentators and jurists have pointed out several kinds of interests supporting the policy of keeping trials open. Primary, of course, is the accused's interest in insuring that he is not persecuted by some sort of inquisition or star chamber *(People v Jelke, supra,* p 62). The accused's interest is also the public's interest: "that the public may see he is fairly dealt with and not unjustly condemned" (1 Cooley, Constitutional Limitations [8th ed, 1927], p 647).

Another consideration supporting open trials is that generally it is assumed that a public presence plays "an important role in assuring 'testimonial trustworthiness', 'by inducing the fear of exposure' of testimony falsely given" *(People v Jelke, supra,* pp 62-63, citing 6 Wigmore, Evidence [3d ed, 1940], § 1834, p 332, as well as other authorities). Similarly, public scrutiny serves to impress upon the Judge, court officers, and the jury that theirs is a serious task which must be performed responsibly. "The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power" *(Matter of Oliver,* 333 US 257, 270, *supra).*

It has also been pointed out that because a trial is public, notice of the proceedings may come to the attention of possible witnesses previously unknown to the parties *(People v Jelke,* 308 NY 56, 63, *supra).* Finally, the public has an interest in knowing the substance of legal controversies, of learning about their government and how the law works in a democratic society, and in acquiring confidence in its judicial remedies *(Matter of Oliver, supra,* p 270, n 24).

While deeply embedded in our law, and supported by strong policy considerations, the right to a public trial is not without limitation. "[T]he right to a public trial must be balanced against other interests which might justify the closing of the courtroom to the public" *(United States ex rel. Lloyd v Vincent,* 520 F2d 1272, 1274, cert den 423 US 937). However, because the right to a public trial must be carefully guarded, the discretionary power to exclude the public must be "sparingly exercised and then, only when unusual circumstances necessitate it" *(People v Hinton,* 31 NY2d 71, 76). The judicial power to exclude the public is delimited by carefully charted principles *(People v Jones,* 47 NY2d 409, 413, *supra).* There must be an evaluation and balancing of several factors: the defendant's rights and interests; the public interests described above; the need to preserve order and decorum in the courtroom; the protection of the parties and witnesses involved; the promotion of present and future law enforcement endeavors; and the need to encourage full and truthful testimony *(People v Jones, supra,* p 413; *People v Hinton, supra,* p 76).

Accordingly, it has been recognized that spectators can be excluded throughout a trial where they are unruly and disruptive, or to prevent overcrowding, or to insure healthy and sanitary conditions *(United States ex rel. Orlando v Fay,* 350 F2d 967, cert den *sub nom. Orlando v Follette,* 384 US 1008; *People v Jelke,* 308 NY 56, 63, *supra)*. Temporary exclusion has been allowed where necessary to protect juvenile parties or witnesses, or to facilitate the testimony of an intimidated or emotionally disturbed witness *(People v Jelke, supra,* p 63; *People v Smallwood,* 31 NY2d 750; *People v Hagan,* 24 NY2d 395; *Geise v United States,* 262 F2d 151, cert den 361 US 842; *United States ex rel. Bruno v Herold,* 408 F2d 125, cert den 397 US 957). Temporary exclusion is also proper during the testimony of undercover police agents where their appearance in court would, if publicly known, impair present or future police investigations and endanger their lives *(People v Hinton,* 31 NY2d 71, *supra)*.

We are of the opinion that the Trial Judge did not abuse his discretion by excluding the public during the alleged victim's testimony. Although the issue is essentially a constitutional one, we are mindful that the Legislature has provided for the discretionary exclusion of the public in rape cases (Judiciary Law, § 4). While the law should not patronize women, it cannot be blind to the very real problems that they may face in describing the lurid details of an alleged sexual assault.

The Supreme Court has characterized rape as being, short of homicide, the "'ultimate violation of self'" *(Coker v Georgia,* 433 US 584, 597). "It is highly reprehensible, both in a moral sense and in its almost total contempt for the personal integrity and autonomy of the female victim" *(Coker v Georgia, supra,* p 597). It often results in serious mental and psychological, as well as physical, injury *(Coker v Georgia, supra,* pp 597-598).

Despite the fact it is such a grotesque and horrid crime, it is often the rape victim, rather than the rapist, who feels the shame of it throughout life. Unfortunately, apparently due to many factors, the victim frequently carries an undeserved psychological burden of guilt and embarrassment (see Berger, Man's Trial, Woman's Tribulation: Rape

Cases in the Courtroom, 77 Col L Rev 1, 23). It may be assumed that often, even where the victim is fortunate enough not to suffer any long-term psychological injury, the recounting of the details of the actual incident, particularly under rigorous cross-examination, would disquiet the most mature witness.

Recognizing the nature and effect of rape, many courts have sanctioned closure of the courtroom during the alleged victim's testimony on the grounds that such action protects the personal dignity of the complaining witness (see *United States ex rel. Latimore v Sielaff,* 561 F2d 691, 694; cert den 434 US 1076, and cases cited therein). Excluding the public during this testimony is meant to minimize any shame and embarrassment, however undeserved, and to prevent the aggravation of the original injury. It fosters truthfulness, rather than inhibits it, because the distraught and embarrassed witness may otherwise be unable to fully and truthfully recount the details of the incident. Finally, it appears that rape is one of the most underreported of crimes (see Berger, Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom, 77 Col L Rev 1, 5). That such underreportage is at least in part due to the psychological impact of the crime appears self-evident. To that extent, a closed courtroom during an alleged victim's critical testimony should tend to encourage the reporting of this crime by all its victims.

The interests served by excluding spectators during the critical testimony of an alleged rape victim stand up well under the careful, judicial balancing of interests required in closure cases. As already noted, there is sound precedent for allowing closure where necessary to protect the witness from undue intimidation or embarrassment, to foster complete, honest testimony, and to promote the efforts of law enforcement. The grounds for excluding the public during the testimony of an undercover police officer are quite analogous. There is no reason to grant the privilege of less-than-public testimony to an undercover officer, but to deny it to a distraught complaining witness in a rape case.

We do not mean to suggest as an a priori rule that the public should always be excluded during the testimony of an alleged rape victim. Such a result would assume too

much. As in the case of testimony from undercover police officers, the court should conduct some sort of inquiry to determine the necessity for closure (see *People v Jones,* 47 NY2d 409, 414-415, *supra).* In the case at bar, a formal inquiry was unnecessary. The witness had already demonstrated through her testimony about the events leading up to the actual sexual assault that she was very distressed. She had apparently cried a number of times. Her testimony stopped on two occasions while she composed herself. The witness herself initiated the request for closure. The Trial Judge was in a position to see and hear her, and to determine the effect her testimony was having on her. It would seem that the evidence of her distress, revealed in this manner, was probably more reliable than if the court had simply asked the witness prior to her testimony whether she was upset and embarrassed. On this record we cannot say that the Trial Judge erred by not conducting further inquiry (cf. *United States ex rel. Latimore v Sielaff,* 561 F2d 691, 695-696, cert den 434 US 1076, *supra).* We also note that the defendant made no specific objection to the prosecutor's motion and did not contest the prosecutor's representation that the witness was having difficulty testifying and very possibly could not coherently complete her testimony unless the public was excluded (cf. *People v Pollock,* 50 NY2d 547).[1]

The fact that defendant's family was also excluded during the critical testimony of the complaining witness does not render the court's decision improper. It is true that generally a defendant is entitled to have his family and friends present with him in a criminal proceeding *(Matter of Oliver,* 333 US 257, 271-272, *supra; People v Hall,* 51 App Div 57, 64). This is not, however, an absolute rule. In one case we recognized a need to exclude spectators, particularly the defendant's friends, during the testimony

---

1. We reject the argument that exclusion of the public during the critical portion of an alleged rape victim's testimony implies that the court believes her testimony (see *Tanksley v United States,* 145 F2d 58, 59). All exclusion means is that the court is convinced that the witness is very upset about her prospective testimony, to the extent that closure appears necessary for her sake and in order to get the full and complete recital of her version of the incident. To prevent any possible inference by the jury that closure entails truthfulness, upon request, the court should give a simple and clear instruction that the exclusion of spectators during the witness' testimony is not a factor from which any unfavorable inference may be drawn against the defendant.

of a witness who was intimidated by their presence *(People v Smallwood,* 38 AD2d 892, affd 31 NY2d 750, *supra;* see *United States ex rel. Smallwood v LaValle,* 377 F Supp 1148, affd 508 F2d 837, cert den 421 US 920). In another case, involving closure of the courtroom during an undercover officer's testimony, we acknowledged that exclusion of all spectators, including the defendant's father, was within the trial court's discretion *(People v Gillespie,* 58 AD2d 893, 895).

Of all spectators, a defendant's family and friends should have priority of attendance. This principle is in keeping with the vital interests upon which the right to a public trial is based. Thus, for example, where the number of spectators needs to be limited because of a courtroom's size, it would be proper to give a reasonable priority of attendance to the defendant's family and friends, over and above the attendance of the mere curious spectator. However, in a particular case, such as is involved here, the reasons for excluding all spectators, including the defendant's family or friends, may prevail.

We are not unmindful of the fact that some courts, in other jurisdictions, have held that excluding the defendant's family in a rape or other sex-crime trial does violate the defendant's right to a public trial *(Commonwealth v Marshall,* 356 Mass 432; *Weaver v State,* 33 Ala App 207, cert den 249 Ala 431; *State v Beckstead,* 96 Utah 528). These cases are inapposite to the case at bar. In *Weaver v State (supra)* the Alabama Court of Appeals gave its approval to the general power to exclude spectators during the testimony of an alleged rape victim in the interest of public morality. Under that rationale the exclusion power is aimed to prevent curious but uninvolved spectators from attending the trial. The close family of the defendant is not within this class of persons, and therefore should not be excluded.

In *People v Jelke* (308 NY 56, 65, *supra),* the Court of Appeals apparently disapproved of the public morality rationale for discretionary closure, and we do not base our decision on that rationale. As already stated, closure of the courtroom during the testimony of a distraught and embarrassed complaining witness in a rape case is intended to

protect her dignity and to insure a full and complete description of the alleged incident. These interests would not be served, and the witness' distress would generally not be relieved, if an exception for the benefit of the defendant's family or friends was grafted onto the discretionary power to exclude the general public.[2]

*Commonwealth v Marshall (supra)* and *State v Beckstead (supra)* are distinguishable in that in both of those cases the public, including the families of the defendants, were excluded throughout both trials. Vital in our consideration of this issue, and indeed in our view of closure in general, is the fact that defendant's family was excluded only during the critical testimony of the complaining witness. As has been noted by the Court of Appeals, "[i]n the balancing of policy and of interest if, for a good reason related directly to the management of the trial, the Judge closes the courtroom as to the testimony of a witness and otherwise keeps it open to the press and public, a defendant is not necessarily deprived of a 'public' trial" *(People v Hagan,* 24 NY2d 395, 397-398, *supra).* Members of defendant's family were not excluded during the corroborating testimony of the transit officer; they were able to hear the expert testimony, as well as defendant's version of the incident. Defendant's right to a public trial was not violated.

We have examined the other point raised by defendant and have found it to be without merit. Accordingly, the judgment of conviction should be affirmed.

DAMIANI, J. P., GIBBONS and WEINSTEIN, JJ., concur.

Judgment of the Supreme Court, Kings County, rendered December 7, 1979, affirmed.

---

2. In fact, while the record does not suggest that such is the case here, it may be that the distraught witness would be less inhibited and embarrassed by a large crowd, which included the defendant's family and friends, then by a small group of spectators made up entirely of the defendant's family and friends.