# State of Vermont v. Dennis A. Rusin

[568 A.2d 403]

No. 87-216

Present: Allen, C.J., Peck, Dooley and Morse, JJ., and Katz, Supr. J.,
Specially Assigned

Opinion Filed October 20, 1989

*Robin Beth Haffner,* Orleans County Deputy State's Attorney, Newport, for Plaintiff-Appellee.

*Martin & Paolini,* Barre, for Defendant-Appellant.

**Morse, J.** Defendant, Dennis Rusin, appeals his conviction, after a jury trial, of lewd and lascivious conduct with a minor girl. He claims the trial court improperly allowed the victim's hearsay statements because her age exceeded the limit imposed by V.R.E. 804a; further, defendant argues that the court's exclusion of two spectators during the victim's testimony violated his right to a public trial. We affirm.

Defendant was tried on two charges, sexual assault and lewd and lascivious conduct. The jury acquitted him of sexual assault. The charges arose from an alleged incident where defendant was claimed to have touched a ten-year-old girl's vagina while she was in bed with defendant's daughter.

## I.

V.R.E. 804a permits evidence of out-of-court statements by

the victim about the alleged crime so long as the victim is "ten years of age or under at the time of trial." This victim was ten years, seven months old at the time of the trial. Defendant first claims that the child was too old to trigger V.R.E. 804a.* We disagree.

We would expect the child in this case to answer a question, "How old are you?", by responding, "Ten." Consequently, we agree with the State, as stated in its brief, "According to common sense and common usage, a child is ten until her eleventh birthday." See *Vincent v. Vermont State Retirement Board*, 148 Vt. 531, 535–36, 536 A.2d 925, 928 (1987) ("Words used . . . which have not been specifically defined . . . are to be given their plain and commonly accepted meaning.").

We decline to place a restrictive interpretation on the Rule's age requirement. Rather, the policy for the Rule favors a liberal construction.

> The new hearsay exception evinces a strong legislative intention to safeguard the right of confrontation while at the same time curing the frequent problem of lack of cor-

---

* Rule 804a provides:
> (a) Statements by a person who is a child ten years of age or under at the time of trial are not excluded by the hearsay rule if the court specifically finds at the time they are offered that:
> (1) the statements are offered in a criminal case in which the child is a putative victim of sexual assault under 13 V.S.A. § 3252, aggravated sexual assault under 13 V.S.A. § 3253, lewd or lascivious conduct with a child under 13 V.S.A. § 2602 or incest under 13 V.S.A. § 205, and the statements concern the alleged crime; or the statements are offered in a juvenile proceeding under chapter 12 of Title 33 involving a delinquent act alleged to have been committed against a child ten years of age or under, if the delinquent act would be an offense listed herein if committed by an adult and the statements concern the alleged delinquent act; or the child is the subject of a petition alleging that the child is in need of care and supervision under chapter 12 of Title 33, and the statement relates to the sexual abuse of the child;
> (2) the statements were not taken in preparation for a legal proceeding and, if a criminal or delinquency proceeding has been initiated, the statements were made prior to the defendant's initial appearance before a judicial officer under Rule 5 of the Vermont Rules of Criminal Procedure;
> (3) the child is available to testify either in court or under Rule 807; and
> (4) the time, content and circumstances of the statements provide substantial indicia of trustworthiness.
> (b) Upon motion of either party, the court shall require the child to testify for the state.

roboration caused by the traditional hearsay rules. The child-victim's early communications are often highly trustworthy . . . . The present rule allows such evidence to reach the jury when there is minimal risk of fabrication.

Reporter's Notes, V.R.E. 804a. Cf. *Grenafege v. Department of Employment Security*, 134 Vt. 288, 290, 357 A.2d 118, 120 (1976) ("remedial legislation . . . is to be construed liberally").

■ We are satisfied that the intent behind the words "ten years of age or under" is to encompass the period of time between a child's tenth and eleventh birthdays. Thus, we hold that the victim's statements are admissible.

## II.

When it came time for the child victim to testify, the court excluded defendant's wife and a neighbor from the gallery on the ground that their presence would distress the victim and adversely affect her ability to testify. Defendant argues that this exclusion denied him a right to a public trial guaranteed by Chapter I, Article 10, of the Vermont Constitution and the Sixth Amendment of the United States Constitution.

During pretrial motion hearings and the trial itself, the judge heard testimony repeatedly from the child victim's friend and her parents concerning the victim's state of mind. The child's fear and embarrassment paralyzed her from telling even her friend about the incident until approximately two weeks afterwards; during their conversation the victim was nervous and "had water in her eyes." At the urging of her friend, she told her father about it. He described her as "red-faced" and crying. The victim had nightmares, trembled when she saw the defendant in the grocery store, and looked at the floor, her face flushed, often crying, during private conversations with her mother.

Although the court denied the State's pretrial request to videotape the victim's testimony, it found that despite the child's normally healthy and out-going nature, she "exhibited natural reluctance to speak of the offense with others . . . and may not be willing to respond to questioning in the context of an open jury trial . . . [due to the] . . . emotional strain on her."

Furthermore, the court granted the State's request to depose four peers of the victim, with the defendant outside the children's view, because that would offer "some emotional protection" and "encourage fuller disclosure of testimony." The court specifically found that all four children feared the defendant; one was even afraid that he might kill her. "[A]ll girls related that the defendant showed them weapons, including swords and guns, and . . . that he had killed a person in the past." One of the child witnesses reported to the prosecutor in the victim's presence "her discomfort with not only having to face Mr. Rusin during her testimony but also a number, not just one person, but a number of people associated with him that she was familiar with or who were friendly with Mr. Rusin." The prosecutor indicated further that both the victim and her parents were concerned about the victim testifying in defendant's presence, but especially so in the presence of those persons associated with the defendant. Thus, the court concluded that the defendant's presence alone would intimidate the victim, and the additional presence of defendant's wife and neighbor would add to the discomfort.

We hold that the trial court's ruling here did not trigger heightened scrutiny mandated by *State v. Robillard*, 146 Vt. 623, 630, 508 A.2d 709, 713–14 (1986) ("in view of the serious constitutional interests involved when a trial court closes its doors to the public, we will, on review, subject such a discretionary act to a microscopic scrutiny"), because only a limited closure was ordered for a compelling need.

The public trial right is founded upon the dangers inherent in secret trials. See *Sunday v. Stratton Corp.*, 136 Vt. 293, 306, 390 A.2d 398, 405 (1978) (quoting *Nebraska Press Association v. Stuart*, 427 U.S. 539, 587 (1976) ("free and robust reporting, criticism, and debate can . . . improve the quality of that system by subjecting it to the cleansing effects of exposure and public accountability"). Open court proceedings "discourage[ ] perjury and ensure[ ] that judges, lawyers and witnesses carry out their respective functions responsibly." *United States v. Sherlock*, 865 F.2d 1069, 1075 (9th Cir. 1989). The *Sherlock* court held that the defendant's public trial right was not infringed by

the "temporary exclusion from the courtroom of defendants' families during one witness's testimony" because it was not a "true 'closure' of proceedings." *Id.* at 1077.

"'[W]here only a partial closure is involved, a court must look to the particular circumstances to see if the defendant still received the safeguards of the public trial guarantee.'"*Id.* (quoting *Douglas v. Wainwright*, 739 F.2d 531, 532 (11th Cir. 1984), *cert. denied*, 469 U.S. 1208 (1985)). The United States Supreme Court has stated that "[t]he protection of victims of sex crimes from the trauma and embarrassment of public scrutiny may justify closing certain aspects of a criminal proceeding." *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9 n.2 (1986). Moreover, Circuit Courts of Appeal have found partial closure warranted and allowed the exclusion of spectators during a particular witness's testimony. E.g., *Sherlock*, 865 F.2d at 1075–76; *United States ex rel. Latimore v. Sielaff*, 561 F.2d 691, 694–96 (7th Cir. 1977), *cert. denied*, 434 U.S. 1076 (1978) (to protect witness's dignity in a rape trial); *United States v. Eisner*, 533 F.2d 987, 993–94 (6th Cir.), *cert. denied*, 429 U.S. 919 (1976) (to protect minor witness with fear of testifying in public).

In the present case, defendant received the protection guaranteed by a public trial, even with the partial closure. The trial court did not bar the public from attending the trial. Nor has defendant raised any particular reason why he needed his wife and neighbor present during the victim's testimony, apart from his natural inclination to have them there for general moral support. While exclusion is to be avoided under usual circumstances in light of the defendant's right to a public trial, the court has discretion to weigh competing factors and tailor a limited exclusionary ruling to meet the exigencies of the moment. In cases like this, young victims of sexual assault are especially susceptible to the exposure of the trial setting. The exclusion of certain spectators is to be judged in light of the public trial guarantee, by the usual standard of discretion afforded the trial court under V.R.E. 611(a)(3) which requires the "court [to] exercise reasonable control over the mode . . . of interrogating witnesses . . . so as to . . . protect witnesses from harassment or

undue embarrassment." *Cliche v. Fair*, 145 Vt. 258, 261, 487 A.2d 145, 148 (1984); see *Press-Enterprise Co. v. Superior Court*, 478 U.S. at 9 n.2.

■ Outside the presence of the jury, the judge interviewed the three spectators to whom the State objected. The court separately asked each one whether she knew the victim. The judge exercised discretion by allowing the spectator who did not know the victim to remain in the gallery and excluding the other two during the victim's testimony. The trial remained open to all other members of the public. Excluding these two spectators somewhat diminished the hostile environment which would naturally impinge on such a young and impressionable witness. Although we have difficulty accepting the court's exclusion of either of the spectators under circumstances where they did not act inappropriately in the courtroom, we defer to the trial court's judgment and find no abuse of discretion. The court was on the scene and was better situated than we to assess the trial climate affecting the child witness. We caution, however, that exclusionary orders should be a rare exception and undertaken only as a last resort.

*Affirmed.*

**Peck, J.,** concurring in part and dissenting in part. Under the circumstances of this case: the age of the victim and the nature of the offense charged, I concur in the majority's resolution of the second issue affirming the trial court's exclusion from the courtroom of defendant's wife and a neighbor, during the testimony of the young victim at trial. Testimony by the complainant during the public trial of a sexual offense case must be a traumatic experience at best; humiliating and embarrassing. It may well have lasting adverse consequences, particularly, as here, when the victim is a child.

I am disturbed, however, by the rationale employed by the majority in affirming the trial court's disposition of the first issue. It is contrived; it is typical of the out-and-out word games

and bald speculation to which appellate courts all too often resort when that is the only route to a desired result.

The majority points out correctly that "V.R.E. 804a permits evidence of out-of-court statements . . . so long as the victim is 'ten years of age or under at the time of trial.'" With candor it cannot escape, the opinion then concedes that in this case the victim was *over* (not "under") ten years of age (as contemplated by the rule). To quote the opinion directly, "[t]his victim was *ten years, seven months old* at the time of the trial." (Emphasis added.) The opinion might have extended its concession a few more decimal points to weeks, days, hours, minutes, and on and on, had there been anything to support it.

It is at this point, however, that the majority begins its game playing. In construing the rule, the opinion holds *common usage* of the key words establish that when a person gives his age as that of his last birthday (regardless of how near in time he may be to his *next* birthday), reference in a rule or statute to a specific age really means that for the entire year between the age specified in the rule or statute, and the next birthday, the specific age does not change by a minute. Thus, as in this case, when the out-of-court statements of a victim are admissible unless the victim is ten years of age or over, V.R.E. 804a doesn't mean what it says in plain English. On the contrary, according to the majority, we must read the rule as if it read *eleven* years of age, notwithstanding the word "ten" is used (which I have never conceived as anything but plain on its face, and in no conceivable way confusing or ambiguous).

The meaning of the entire key phrase in the rule, "ten years of age or under" is equally plain on its face and admits of no ambiguity. Without hesitation I can say that everyone (except the majority) who reads this phrase would agree that its meaning is plain and that it means *exactly* what it says: in substance, that once a victim reaches his tenth birthday, he becomes too old to trigger the admissibility of any out-of-court statements he may have made. Otherwise, as noted above, the rule doesn't mean "ten"; necessarily, it means "eleven," regardless of its express language. Without more, this is indeed ridiculous.

But the ingenuity of the majority is not yet exhausted. Out of thin air, or like a prestidigitator pulling a rabbit from a hat, the opinion trots out the rule that when the words used in a rule or statute have not been specifically defined they must be given their commonly accepted meaning, citing *Vincent v. Vermont State Retirement Board*, 148 Vt. 531, 535–36, 536 A.2d 925, 928 (1987).

However, the majority does not understand the significance of *Vincent* as applied to this case. Properly applied here, it supports my position. In effect, *Vincent* holds only that if a given statute contains no definition which alters the ordinary or "plain" meaning of the statutory word or words, then the plain meaning is to be applied, and the courts are obligated to do so. In this case, the meaning of the key phrase, "ten years of age or *under*" (emphasis added) is obviously "plain on its face"; any uncertainty or ambiguity dwells exclusively and only in the minds of the majority. There is no "definition" of any of these words used that would take any one of them, or the entire phrase itself, out of the plain meaning rule; accordingly, there is no need for construction. The rule must, therefore, be enforced according to its terms. Its meaning can and must be ascertained from the rule itself. See, e.g., *Weissenstein v. Burlington Board of School Commissioners*, 149 Vt. 288, 292, 543 A.2d 691, 693 (1988). And similarly:

> "[W]hen the meaning of a statute is plain on its face it must be enforced according to its terms and there is no need for construction; the legislative intent is to be ascertained from the act itself, which is presumed to be in accordance with the ordinary meaning of the statutory language."

*Derosia v. Book Press, Inc.*, 148 Vt. 217, 222, 531 A.2d 905, 908 (1987) (quoting *Hill v. Conway*, 143 Vt. 91, 93, 463 A.2d 232, 233 (1983) (per curiam)).

A word about "the commonly accepted meaning." This reference by the majority is to the common practice of referring to one's age as being that age achieved on the last birthday throughout the ensuing year until the next birthday. The attempted application of this familiar practice, not only by children but by adults as well, to alter the plain meaning of Rule

804a is ludicrous. The practice is, as everyone knows, no more than a matter of convenience, not intended by anyone as a painstaking recitation of exact age. No one is going to the painful length of saying, for example, "I am twenty years, eight months, two weeks and three days old." We all know that after we reach any given age, we immediately become older than that age with every passing second. The majority's holding that "ten" means "eleven," and its use as a mere phrase of convenience to support its position borders on the risible indeed.

Other preposterous consequences flow from the majority rationale. Thus, for example, under 23 V.S.A. § 606 a license to operate a motor vehicle "shall not be issued to any person under eighteen years of age." Following the majority's wonderful rationale, this means, of course, that an applicant is *under* eighteen until he is nineteen; so vague and ambiguous is § 606. Similarly, 7 V.S.A. § 222(3) prohibits the employment of persons "under the age of 18" in certain establishments, for the purpose of preparing, mixing, dispensing, or serving alcoholic beverages. Owners of such establishments should take warning: the majority's opinion in today's case means that now, job applicants are under eighteen until they are nineteen, so vague and ambiguous is § 222. Finally, many other concepts relating to age, too numerous to justify further discussion here, must now be reexamined because they may lack definitions of such expressions that had previously been accepted as plain on their face; phrases such as "under (or over) a specific age," "ten years old"; provisions relating to drinking, driving, voting, military service, and no doubt many others.

It is probable that, on the record, the majority is so convinced of defendant's guilt that it is prepared to deprive him of the benefit of a clear rule promulgated by the Court itself. If that is so, the first issue might have been resolved on a "harmless error" basis rather than twisting the rule out of its clear meaning simply to accomplish an affirmance.

If, on the other hand, the majority feels that ten years of age is too young, the remedy is to change the rule, following the

proper procedure for doing so. The rule should not be changed by an exercise in semantics which makes the rule say what it clearly does not.

Concluding this dissent in a lighter vein, the majority appears to have made the first real break-through in the age-old search for a way to restore lost youth! It is unfortunate that the writers who penned the wistful pleas: "Backward, turn backward, O Time in your flight, make me a child again just for tonight." and "Time, you old gypsy man, will you not stay, put up your caravan just for one day?" did not then have the majority available for consultation. The ghost of Ponce de Leon, who, in life, searched for the fountain of youth must be rejoicing. Finally, I am reminded of a limerick. Memory being fallible it may not be strictly accurate, but as I remember it, it read:

> There was a young lady named Bright,
> Whose speed was much faster than light,
> She took off one day,
> In a relative way,
> And came back on the previous night.

The majority is even faster than Miss Bright; it returns us a full year back of our last birthday.