STATE of Tennessee, Appellee,

v.

Ricky SAMS, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

Oct. 2, 1990.

Permission to Appeal Denied by Supreme Court Jan. 7, 1991.

Charles W. Burson, Atty. Gen. & Reporter, Amy Tarkington, Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen., Edward Wilson, Rebecca Davenport, Asst. Dist. Attys. Gen., Blountville, for appellee.

James S. Roach, Johnson City (appeal only), Kerry A. Musick, Blountville (trial only), for appellant.

## OPINION

JONES, Judge.

The appellant, Ricky Sams, appealed as of right to this Court following his convictions for two counts of aggravated rape, one count of rape, and two counts of sexual battery. The victims of these offenses were the appellant's two minor children.

The appellant contends that he was denied a public trial. He argues that the assistant district attorney general used the subpoena power of the trial court as a subterfuge for removing his relatives from the courtroom.

This is a case of first impression. Our research has not revealed a case involving the precise issue raised by the appellant.[1]

■ The state called the appellant's son as its second witness. Before the witness completed his testimony, the trial judge recessed the proceedings for lunch. During the recess, the assistant district attorney general issued subpoenas for the appellant's grandmother, aunt and brother. These relatives had attended the morning session of the trial. When the appellant's stepmother and a second aunt arrived for the afternoon session of the trial, the assistant district attorney general issued subpoenas for them.

After the trial judge reconvened the proceedings, the following colloquy occurred between counsel and the trial judge:

**GENERAL WILSON:** From the audience, every time ... [R.E.S.] answered a question there was loud talking between, among—for one thing, his grandmother and those that were seated behind him. That was brought to my attention, not by an officer, but another spectator. So, I have on behalf of the State served five (5) subpoenas, had the officers serve five (5) subpoenas on those people, and since the Defendant has asked for the rule, I would ask that they step out. We would ask the Court to instruct those who stay in this courtroom that they are not to comment upon the testimony of any witness whether for the State or the Defendant in this case, or make side bar comments.

**THE COURT:** Well, if there are any spectators in this courtroom, during the testimony of the witnesses, if you demonstrate in any manner, either through actions or otherwise, the Court will remove you from the courtroom, so you need to keep that in mind.

---

1. The cases of *Commonwealth v. Burton*, 459 Pa. 550, 330 A.2d 833 (1974) and *Weatherford v. State*, 369 So.2d 863 (Ala.Crim.App.), *cert. denied*, 444 U.S. 867, 100 S.Ct. 141, 62 L.Ed.2d 91 (1979) are similar, but these decisions do not address the precise issue in this case.

MR. MUSICK: If your Honor, please, I would like to respond. I was here during the testimony, and I didn't hear anything distracting the Court. Your Honor was there. If there was any distraction, your Honor would have heard it. And I quite frankly object to the State issuing subpoenas for the mere purpose of excluding people from the courtroom.

THE COURT: Well, I don't know that they did that.

MR. MUSICK: General Wilson, do you intend to call these people as witnesses?

GENERAL WILSON: I very well may, I very well may, Mr. Musick.

All five relatives were subsequently removed from the courtroom for the balance of the trial.

The statements made by the assistant district attorney general make it crystal clear that he used the subpoena power of the trial court as a subterfuge for excluding the appellant's relatives from the courtroom. He had no intention of calling these individuals as witnesses. They were never interviewed by the assistant district attorney general or a member of the district attorney general's staff. Moreover, it is highly doubtful that these individuals had knowledge of facts that would have been admissible as evidence. Of course, the assistant district attorney general did not call any of these individuals as witnesses.

The trial judge knew, or should have known, from the statement of the assistant district attorney general, the absence of any noticeable disturbance in the courtroom during the morning session, and the individuals for whom the subpoenas were issued that the assistant district attorney general was using the subpoena power of the court to do indirectly what he could not do directly, namely, exclude the appellant's relatives from the courtroom. Yet the trial judge made no effort to inquire into the motives of the assistant district attorney general in taking this unusual action nor the alleged disturbance supposedly created by the relatives. Ironically, two of the relatives excluded did not attend the morning session of the trial.

The assistant district attorney general's blatant abuse of the trial court's subpoena power for the exclusive purpose of removing the relatives from the courtroom constituted egregious prosecutorial misconduct. This state action violated the appellant's constitutional right to a public trial[2] as well as the constitutional right of the relatives to attend the trial.[3]

Article I, Section 9 of the Tennessee Constitution affords the accused the right to a "speedy public trial." The origin and purpose of this right was ably stated in the case of *In re Oliver:*[4]

This nation's accepted practice of guaranteeing a public trial to an accused has its roots in our English common law heritage. The exact date of its origin is obscure, but it likely evolved long before the settlement of our land as an accompaniment of the ancient institution of jury trial. In this country the guarantee of an accused of the right to a public trial first appeared in a state constitution [Pennsylvania] in 1776. Following the ratification in 1791 of the Federal Constitution's Sixth Amendment, which commands that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ..." most of the original states and those subsequently admitted to the Union adopted similar constitutional provisions. Today almost without exception every state by constitution, statute, or judicial decision, requires that all criminal trials be open to the public.

The traditional Anglo–American distrust for secret trials has been variously ascribed to the notorious use of this practice by the Spanish Inquisition, to the excesses of the English Court of Star Chamber, and to the French monarchy's

---

2. Tenn. Const., Art. I, Sec. 9.

3. *See State v. Drake,* 701 S.W.2d 604 (Tenn. 1985). The appellant does not have standing to seek redress for the deprivation of his relative's constitutional right to attend the trial proceedings. Only the relatives were entitled to seek redress for the violation of their respective right.

4. 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948).

abuse of the *lettre de cachet.* All of these institutions obviously symbolized a menace to liberty. In the hands of despotic groups each of them had become an instrument for the suppression of political and religious heresies in ruthless disregard of the right of an accused to a fair trial. Whatever other benefits the guarantee to an accused that his trial be conducted in public may confer upon our society, the guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution.[5]

In summary, this right serves as a guarantee that the accused will be "fairly dealt with and not unjustly condemned."[6]

The presence of citizens in the courtroom safeguards the accused against (a) the court being used as an instrument of persecution,[7] (b) the abuse of judicial power and discretion,[8] and (c) potentially perjurious and abusive testimony.[9] In addition, the public's presence may induce unknown witnesses to come forward with evidence relevant to the issues in controversy or facts which can be used to impeach a witness,[10] encourage the trial participants to perform their respective duties conscientiously,[11] and afford the citizens in the community an opportunity to observe the criminal justice system in progress, determine whether the system is functioning adequately, and express these findings in the form of public opinion.[12]

The appellate courts of this State have never specified which citizens, exclusive of the media,[13] must be permitted to attend court proceedings in order to satisfy the minimum requirements of the right to a public trial.[14] However, courts have uni-

**5.** 333 U.S. at 266–270, 68 S.Ct. at 504–506, 92 L.Ed. at 690–692.

**6.** *Estes v. Texas,* 381 U.S. 532, 538–539, 85 S.Ct. 1628, 1631, 14 L.Ed.2d 543, 548 (1965). *See Waller v. Georgia,* 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31, 38 (1984); *Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 381, 99 S.Ct. 2898, 2906, 61 L.Ed.2d 608, 622 (1979).

**7.** *In re Oliver,* supra, 333 U.S. at 270, 68 S.Ct. at 506, 92 L.Ed. at 692.

**8.** *Kleinbart v. United States,* 388 A.2d 878, 881 (D.C.1978).

**9.** *Estes v. Texas,* supra, 381 U.S. at 583, 85 S.Ct. at 1653, 14 L.Ed.2d at 573 (Warren, C.J., concurring); *Waller v. Georgia,* supra, 467 U.S. at 46, 104 S.Ct. at 2215, 81 L.Ed.2d at 38; *Davis v. Reynolds,* 890 F.2d 1105, 1109 (10th Cir.1989); *Nieto v. Sullivan,* 879 F.2d 743, 753 (10th Cir. 1989); *United States v. Sherlock,* 865 F.2d 1069, 1075–1076 (9th Cir.1989); *State v. Sheppard,* 182 Conn. 412, 438 A.2d 125, 127 (1980); *People v. Jelke,* 308 N.Y. 56, 62–63, 123 N.E.2d 769, 772 (1954); *State v. Lane,* 60 Ohio St.2d 112, 397 N.E.2d 1338, 1343 (1979); *State v. Harding,* 635 P.2d 33, 35 (Utah 1981). *See Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 605–606, 102 S.Ct. 2613, 2619–2620, 73 L.Ed.2d 248, 256–257.

**10.** *Estes v. Texas,* supra, 381 U.S. at 583, 85 S.Ct. at 1653, 14 L.Ed.2d at 573 (Warren, C.J., concurring); *Waller v. Georgia,* supra, 467 U.S. at 46, 104 S.Ct. at 2215, 81 L.Ed.2d at 38; *Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 383, 99 S.Ct. 2898, 2907, 61 L.Ed.2d 608, 623 (1979); *Nieto v. Sullivan,* supra, 879 F.2d at 753; *United States v. Sherlock,* supra, 865 F.2d at 1076; *Tanksley v. United States,* 145 F.2d 58, 59 (9th Cir.1944);

*People v. Jelke,* supra, 308 N.Y. at 62–63, 123 N.E.2d at 772; *State v. Lane,* supra, 397 N.Ed.2d at 1343; *State v. Harding,* supra, 635 P.2d at 35. *See Globe Newspaper Co. v. Superior Court,* supra, 457 U.S. at 605–606, 102 S.Ct. at 2619–2620, 73 L.Ed.2d at 256–257.

**11.** *Estes v. Texas,* supra, 381 U.S. at 583, 85 S.Ct. at 1653, 14 L.Ed.2d at 573 (Warren, C.J., concurring); *Waller v. Georgia,* supra, 467 U.S. at 46, 104 S.Ct. at 2215, 81 L.Ed.2d at 38; *Nieto v. Sullivan,* supra, 879 F.2d at 753; *United States v. Sherlock,* supra, 865 F.2d at 1076; *People v. Jones,* 82 A.D.2d 674, 442 N.Y.S.2d 999, 1001 (1981); *State v. Lane,* supra, 397 N.E.2d at 1343. *See Globe Newspaper Co. v. Superior Court,* supra, 457 U.S. at 605–606, 102 S.Ct. at 2619–2620, 73 L.Ed.2d at 256–257.

**12.** *Estes v. Texas,* supra, 381 U.S. at 583, 85 S.Ct. at 1653, 14 L.Ed.2d at 573 (Warren, C.J., concurring); *Nieto v. Sullivan,* supra, 879 F.2d at 753; *United States v. Sherlock,* supra, 865 F.2d at 1076; *People v. Jones,* supra, 442 N.Y.S.2d at 1001.

**13.** *See State v. Drake,* supra.

**14.** *See, e.g., Douglas v. Wainwright,* 714 F.2d 1532, 1537 (11th Cir.1983), *judgment vacated and remanded,* 468 U.S. 1206, 104 S.Ct. 3575, 82 L.Ed.2d 874 (1984), *appeal after remand,* 739 F.2d 531 (11th Cir.1984), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985). It has been said that "[a] public trial implies only that the court must be open to those who wish to come, sit in the available seats, conduct themselves with decorum, and observe the trial process." *Estes v. Texas,* supra, 381 U.S. at 589, 85

versally recognized that the right of an accused to have his family and friends present is an integral element of right to a public trial.[15] In the case of *In re Oliver*, supra, the United States Supreme Court said that "without exception all courts have held that an accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged."[16] Other courts have been just as emphatic regarding the accused's right to have his family and friends present. In *State v. Harding*, supra, the Utah Supreme Court stated that "an accused is entitled to the presence of family and friends when facing serious criminal charges."[17] Later, the Utah Supreme Court stated in *State v. Crowley*, supra, that it could not conceive of a case "in which the near relatives and friends of the accused should not be permitted to be in attendance upon the trial for the purpose of seeing that the accused is fairly and justly dealt with by the officers of the court and not improperly condemned."[18]

There is general agreement that the accused's family and friends are to be given priority over the general public when the courtroom is overcrowded.[19] Also, closure orders frequently exempt an accused's family and friends so that they can remain in the courtroom.[20] On occasion appellate courts note that a closure order made no exception for the accused's family and friends.[21]

■ There are two classifications of closures: complete closures and partial closures. A complete closure has the effect of excluding everyone from the courtroom with the exception of the parties, the attorneys, court personnel, and the witnesses. A complete closure may be for the entire trial or proceeding,[22] or a portion of the proceedings such as the testimony of a particular witness.[23] A partial closure results in the exclusion of certain members of the public while other members of the public are permitted to remain in the court-

S.Ct. at 1663, 14 L.Ed.2d at 584 (Harlan, J., concurring).

**15.** *In re Oliver*, supra; *Commonwealth v. Marshall*, 356 Mass. 432, 253 N.E.2d 333 (1969); *State v. Harding*, supra; *State v. Crowley*, 766 P.2d 1069 (Utah 1988). *See United States v. Kobli*, 172 F.2d 919 (3d Cir.1949).

**16.** 333 U.S. at 271–272, 68 S.Ct. at 507, 92 L.Ed. at 693.

**17.** 635 P.2d at 35.

**18.** 766 P.2d at 1071 (quoting from *State v. Jordan*, 57 Utah 612, 196 P. 565, 567 (1921)).

**19.** *United States v. Kobli*, supra, 172 F.2d at 922. *See Davis v. United States*, 247 F. 394 (8th Cir. 1917); *People v. Jones*, supra, 442 N.Y.S.2d at 1003 ["a defendant's family and friends should have priority of attendance."]; *State v. Holm*, 67 Wyo. 360, 224 P.2d 500, 509 (1950).

**20.** *See, e.g., Aaron v. Capps*, 507 F.2d 685, 687–688 (5th Cir.1975) [prosecutrix's relatives, defendant's relatives, defendant's clergyman, and the press allowed to remain in the courtroom]; *Tanksley v. United States*, supra, 145 F.2d at 58 [court exempted "the parties and their counsel, the officers of the law, representatives of the press, and the brother and father of the defendant"]; *People v. Morgan*, 152 Ill.App.3d 97, 105 Ill.Dec. 303, 307, 504 N.E.2d 172, 176 (1987) [defendant's family members exempted from limited closure order]; *People v. Yeager*, 113

Mich. 202, 71 N.W. 491, 492 (1897) ["any friend or person that was connected or related to or interested in the defendant himself was not be excluded"]; *State v. Holm*, supra [prosecutrix's family and friends as well as the accused's family and friends permitted to remain in the courtroom].

**21.** *See, e.g., Davis v. Reynolds*, supra, 890 F.2d at 1110 ["The trial court order made no exceptions for members of the press or for relatives of the defendant"]; *State v. Sheppard*, 182 Conn. 412, 438 A.2d 125, 1128 (1980) ["the court should have inquired whether it was necessary to exclude members of the defendant's family, when members of the complainant's family were permitted to remain in the courtroom"].

**22.** *See, e.g., Waller v. Georgia*, supra [everyone excluded from the courtroom for the entire suppression hearing]; *Commonwealth v. Marshall*, supra [everyone excluded from the courtroom during the trial of a sexual offense committed against a minor victim].

**23.** *See, e.g., Davis v. Reynolds*, supra, [exclusion of press and general public during the testimony of one of the three minor victims of sex offense]; *Weaver v. State*, 33 Ala.App. 207, 31 So.2d 593, *cert. denied*, 249 Ala. 431, 31 So.2d 595 (1947) [all spectators removed from the courtroom during the testimony of the victim in a prosecution for a sexual offense].

room.[24] In the case *sub judice* the assistant district attorney general's use of subpoenas to remove the appellant's family from the courtroom created a partial closure.

■ When a party requests a partial closure, the trial judge must apply the "substantial reason" test to determine if the closure is warranted.[25] This test is less stringent than the standard which must be applied when there is a request for a complete closure.[26]

■ Before a trial judge orders a partial closure, he should conduct a jury-out hearing.[27] This will provide the parties an opportunity to discuss the circumstances prompting the request,[28] and introduce evidence on the issue if appropriate.[29] Such a hearing affords the trial judge an opportunity to determine if a "substantial reason" exists for the requested closure.[30] If the trial judge finds that a "substantial reason" exists, he must compare the accused's right to have the citizens sought to be excluded present with the need for a closure.[31] When the trial judge finds that the need for a partial closure outweighs the

right to have the specified citizens present, the closure order should be narrowly tailored to protect the precise interest or purpose for which the closure is being ordered.[32]

Although the trial judge did not conduct a jury-out hearing in this case, a close reading of the transcript does not reveal a "substantial reason" for the partial closure—the removal of the appellant's relatives. Consequently, the partial closure created by the assistant district attorney general's use of subpoenas was not warranted. The same result would be reached had the trial judge ordered the closure. We parenthetically note that the method employed by the assistant district attorney effectively denied the relatives their right to object to the closure.[33]

The assistant district attorney general's motive for wanting the appellant's relatives removed from the courtroom, is obvious. He did not want the victims, the appellant's children, to face their relatives during their testimony. As a result, the safeguard that attempts to improve the quality of testimony by discouraging perjury and abusive-

---

**24.** *See* e.g., *United States v. Sherlock,* 865 F.2d 1069, 1073 (9th Cir.1989) [members of the accused's family excluded due to disruptive behavior during victim's testimony]; *Hackett v. State,* 266 Ind. 103, 360 N.E.2d 1000, 1004 (1977) [relatives and friends excluded during a single rebuttal witness who was hesitant to testify due to a few of accused's relatives and friends]; *State v. Rusin,* 568 A.2d 403, 405 (Vt.1989) [accused's wife and neighbor properly excluded because "their presence would distract the (minor) victim and adversely affect her ability to testify"].

**25.** *See Nieto v. Sullivan,* 879 F.2d 743, 753 (10th Cir.1989); *United States v. Sherlock,* 865 F.2d 1069, 1077 (9th Cir.1989); *Douglas v. Wainwright,* 714 F.2d 1532, 1540–1541 (11th Cir. 1983), *judgment vacated and remanded,* 468 U.S. 1206, 104 S.Ct. 3575, 82 L.Ed.2d 874 (1984), *appeal after remand,* 739 F.2d 531 (11th Cir. 1984), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985).

**26.** *Nieto v. Sullivan,* supra. For the standard to be applied when there is a request for a complete closure see *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct.

2814, 65 L.Ed.2d 973 (1980); *Davis v. Reynolds,* 890 F.2d 1105 (10th Cir.1989); *IP v. Henderson,* 710 F.Supp. 915 (S.D.N.Y.1989).

**27.** *State v. Hightower,* 376 N.W.2d 648 (Iowa 1985) [jury excluded from courtroom before request was made].

**28.** *See State v. Sheppard,* supra; *State v. Crowley,* supra.

**29.** *State v. Sheppard,* supra; *State v. Crowley,* supra.

**30.** *Nieto v. Sullivan,* supra, 879 F.2d at 753–754; *United States v. Sherlock,* supra, 865 F.2d at 1076–1078. *See Douglas v. Wainwright,* supra; *State v. Sheppard,* supra; *State v. Hightower,* supra; *State v. Crowley,* supra.

**31.** *United States v. Sherlock,* supra, 865 F.2d at 1077.

**32.** *Nieto v. Sullivan,* supra; *United States v. Sherlock,* supra.

**33.** *United States v. Brooklier,* 685 F.2d 1162, 1167–1168 (9th Cir.1982). *See United States v. Sherlock,* supra, 865 F.2d at 1078; *State v. Drake,* supra.

ness was seriously impaired.[34] In cases of this nature, a victim's knowledge that family members are in the courtroom constitutes the strongest safeguard an accused can have against perjured or abusive testimony.

The assistant district attorney general did not hesitate to trample the constitutional rights of the appellant to gain a tactical advantage. Moreover, he was willing to acquire this advantage at any cost, including the use of the trial court's subpoena powers as a subterfuge to obtain the relatives removal. Therefore, we conclude that the state action of the assistant district attorney general denied the appellant a public trial in violation of Article I, Section 9 of the Tennessee constitution; and, as as result, the appellant is entitled to a new trial.

 The appellant is not required to establish actual prejudice as a prerequisite for relief.[35] Prejudice is implied once a violation of the right to a public trial has been established.[36] If the rule was otherwise, it would be difficult, if not impossible, for the accused to establish that he was prejudiced as a result of the violation.[37] Moreover, such a requirement would seriously impair, if not actually destroy, the safeguards provided by the public trial requirement.[38]

The judgment of the trial court is reversed, and this cause is remanded for a new trial.

REID, J., concurs.

DWYER, J., dissents.

DWYER, Judge, dissenting.

I am in respectful disagreement with the majority's conclusion that the subpoenaing of appellant's relatives denied appellant his constitutional right to a public trial. Even taking appellant's argument in the best light to him, there simply was no denial of a public trial.

The majority gives an excellent recital of the state of the law throughout various and sundry jurisdictions concerning full and partial closure. Unfortunately for the majority's reasoning, this case involves the subpoenaing of witnesses, not the closure of a trial. The trial judge in no wise ordered a closure, full or partial. What did occur was that the State subpoenaed five of the appellant's relatives: several of whom were present in the courtroom and, as the majority notes, several of whom were not. Moreover, it was the appellant who asked for the rule excluding subpoenaed witnesses.

Although appellant claims that he was greatly prejudiced by the exclusion of five of his relatives, he did not make a motion to quash the subpoenas. Unless a motion to quash is filed, witnesses will normally be placed under the rule. The trial court noted that had appellant filed a motion to quash the subpoenas, he might have held a hearing on the issue. In the absence of such a motion, he placed the witnesses under the rule. Under Rule 36(a), Tenn.R. App.P., appellant should not be granted relief now when he failed to take the action

**34.** *See Estes v. Texas,* supra, 381 U.S. at 583, 85 S.Ct. at 1653, 14 L.Ed.2d at 573 (Warren, C.J., concurring); *Davis v. Reynolds,* 890 F.2d at 1109; *State v. Sheppard,* supra, 438 A.2d at 127; *State v. Lane,* supra, 397 N.E.2d at 1343.

**35.** *Waller v. Georgia,* supra, 467 U.S. at 49–50, 104 S.Ct. at 2217, 81 L.Ed.2d at 40; *United States ex rel. Bennett v. Rundle,* 419 F.2d 599, 608 (3d Cir.1969); *United States v. Kobli,* supra, 172 F.2d at 921; *Tanksley v. United States,* supra, 145 F.2d at 59; *Davis v. United States,* 247 F. 394, 398 (8th Cir.1917); *IP v. Henderson,* 710 F.Supp. 915, 919 (S.D.N.Y.1989); *State v. Sheppard,* supra, 182 Conn. at 418, 438 A.2d at 128; *People v. Jones,* 47 N.Y.2d 409, 416, 418 N.Y.S.2d 359, 363–64, 391 N.E.2d 1335, 1340 (1979). *See*

*Davis v. Reynolds,* supra, 890 F.2d at 1111; *Nieto v. Sullivan,* supra, 879 F.2d at 753 n. 15; *United States v. Eisner,* 533 F.2d 987, 993 (6th Cir.1976)

**36.** *United States ex rel. Bennett v. Rundle,* supra; *United States v. Kobli,* supra; *Tanksley v. United States,* supra; *Davis v. United States,* supra. *See United States v. Eisner,* supra.

**37.** *United States ex rel. Bennett v. Rundle,* supra; *Davis v. United States,* supra.

**38.** *United States v. Kobli,* supra; *Tanksley v. United States,* supra; *Davis v. United States,* supra; *Kleinbart v. United States,* supra, 388 A.2d at 882.

of filing a motion to quash, which was available to him, and could have nullified any harmful effect that may have flowed from the issuance of the subpoena.

The majority basely concludes that the sole possible explanation for the State's subpoenas was to exclude the relatives and therefore make it easier for appellant's children to prevaricate on the witness stand about how their father molested them. For several reasons, the majority's logic does not persuade.

First, all attorneys who have actual trial experience know that, in the name of caution, all possible witnesses should be subpoenaed. That fact does not necessitate that all those witnesses will be called. For example, an experienced attorney will leave witnesses in reserve for use in rebuttal if it becomes necessary. Furthermore, experienced trial attorneys should know that a court very rarely delves into the motivation behind a party's desire to subpoena a witness.

Second, the majority says it is "crystal clear" that the assistant attorney general never intended to call the relatives to the witness stand. Yet a reading of the excerpted transcript in the majority's opinion reveals that the assistant attorney general said that he very well might call them as witnesses. The trial court related that it did not believe that the State subpoenaed those witnesses for the sole purpose of excluding them. It is, therefore, mere conjecture by the majority to assume that the State had no intention of not calling them. Furthermore, the trial court found as fact that no one was excluded from the trial and no one was prevented from entering into the courtroom, constituting a flat repudiation that the proceedings were not public.

Moreover, we do not find that the exclusion of five relatives constituted a denial of public trial. The five persons were excluded because they were potential witnesses. There is no evidence in the record to show that any other spectators—family, friend, or otherwise—were excluded. From this record, there is no evidentiary support that all of appellant's relatives or friends were excluded. In fact, affidavits in support of appellant's motion for new trial reflect that a Brenda Sams and a Linda Sams were present during the entire trial.

Summed up, as found by the trial court, the appellant was convicted fair and square in an open forum and no one was excluded from that forum. In short, no closure occurred.

The majority excoriates the assistant attorney general, stating that he willfully "trampled" appellant's constitutional rights and used the subpoenas "as a subterfuge to obtain the relatives removal." Conversely, the evidence reflects an appellant who was fairly convicted on evidence which shows acts of gross, reprehensible and repulsive conduct in sexually abusing his minor children. For that conduct, of which the jury found him guilty beyond a reasonable doubt, I would affirm the trial court's judgment.